**Fred Maynard, Plaintiff-Appellant, v. Irving Davis Company, Defendant-Appellee.**

**Gen. No. 53,598.**

First District, Fourth Division.

March 11, 1970.

 

Karno & Schey, of Chicago (Alan L. Jonas, of counsel), for appellant.

Stanton & Healy, of Chicago (Edwin A. Strugala, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Plaintiff's cause of action against Bill McMillan, a codefendant, was based on a battery committed by Bill McMillan against him. Plaintiff's claim against the defendant was by reason of Bill McMillan's intoxicated condition which was allegedly brought on either in whole or in part by the sale or gift of alcoholic beverages by the defendant to Bill McMillan. (Illinois Dram Shop Act, Ill Rev Stats 1965, c 43, § 135.) The jury returned a verdict in favor of the plaintiff and against the defendant, Bill McMillan, in the sum of $6,750 and also returned a verdict of not guilty in favor of the defendant Irving Davis Company (hereinafter referred to as the defendant).

Plaintiff appeals from an order denying his motion for a directed verdict against defendant and from the order denying his motion for judgment in his favor notwithstanding the verdict of the jury. On appeal, plaintiff also urges that the trial court improperly instructed the jury by refusing to give his instruction No. 20.

Testimony of Fred Maynard, the plaintiff:

On Sunday, May 22, 1966, he went to Santa Fe Park to watch stock car races. As he was watching the races, he had a conversation with a girl and asked her if she

29

wanted a beer. He bought her a beer and they sat down at a nearby table. The beer was in a milk shake size dixie cup. They sat at this table for ten or fifteen minutes. Bill McMillan's name was never mentioned during the conversation. He had seen McMillan race before but he did not know him personally.

When he first saw McMillan, the girl was still sitting next to him. McMillan walked over to them along with two other fellows. He observed that McMillan had bloodshot eyes and was pale. The girl introduced him to McMillan. McMillan's conversation with him was not friendly. The girl remained seated next to him.

McMillan left after this first conversation and walked over to the beer stand and bought a beer. He saw McMillan drink it. He was still talking to the girl while McMillan drank his beer. After McMillan finished his beer he again walked over to the table and said a couple of words to the girl. He did not remember what was said. McMillan left and bought another beer.

After finishing the second beer, McMillan and the other two fellows came back over to him. As McMillan approached him this third time, he noticed that McMillan "looked real mad and he was sort of weaving when he walked." The girl was sitting next to him. McMillan said, "You better get out of here, fellow," and then hit him in the face. His nose and face were bleeding. He saw McMillan hit the girl in the face with his fist before he went to the washroom to clean up. After he cleaned up, he immediately left the racetrack. In his opinion McMillan was intoxicated the first time he saw him.

He then described his injuries and doctor's fees.

On cross-examination he testified that McMillan "had gotten pushed out of the race and he was really mad." Another driver had forced him out in some illegal manner. He had seen this happen. The girl also told him that McMillan had been forced out of the race.

Testimony of Carl Werner, called by the plaintiff:

He was employed as a bartender by the defendant during May 1966. On May 22, 1966, he did not see any altercation between plaintiff and defendant. He knew Bill McMillan but not personally. He did not know the plaintiff well enough to talk to him. If he was tending bar on May 22 at Santa Fe Park, he probably sold McMillan some beer.

He did not have a clear memory of May 22, 1966. He could not remember what day in the week May 22, 1966 was, nor could he specifically remember selling Bill McMillan any beer that night. He could not recall seeing any fight.

Opinion

Plaintiff contends that the trial court erred in refusing to grant his motions for a directed verdict or judgment notwithstanding the verdict. He argues that a review of all of the testimony pertinent and relative to the issue of defendant's liability is uncontradicted and unimpeached and, therefore, the trial court should have directed a verdict in his favor at the close of all the evidence or, in the alternative, granted his motion for judgment notwithstanding the verdict.

In Galarza v. Melter, 116 Ill App2d 173, 253 NE2d 469, the trial court directed the jury to find in favor of plaintiff on the question of liability when defendant did not proffer any evidence but rested after plaintiff's case was presented. This court reversed and remanded the cause holding that "disputed inferences could have been drawn from the evidence and the issue of liability should have been submitted to the jury." We found that:

> "A directed verdict is proper if all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence

could ever stand. Pedrick v. Peoria Eastern R. R. Co., 37 Ill2d 494, 229 NE2d 504 (1968). In Ladd v. Ruck, 108 Ill App2d 379 (1969), the court stated at page 382:

> " 'The Pedrick rule does not require that verdicts be directed or motions notwithstanding verdicts be granted merely because a defendant has failed to introduce evidence in his own behalf or has failed to dispute facts presented by the plaintiff.'

> . . . . . .

"Facts may be undisputed or a defendant may have failed to introduce evidence in his behalf, but it does not follow that issues are, therefore, uncontroverted. Ladd, supra. In Genck v. McGeath, 9 Ill App2d 145, 132 NE2d 437 (1956), where defendant offered no evidence, the court said at page 153:

> " 'Even where there is no dispute in the evidence but where inconsistent conclusions may legitimately be drawn, the question is one for the jury. Panczko for Use of Enright v. Eagle Indemnity Co. of New York, 346 Ill App 144; Minters v. Mid-City Management Corp., 331 Ill App 64.' " See also Ladd, supra.

██ ██ In the instant case, the facts on which plaintiff relies do not necessarily lend themselves to the conclusion that McMillan was intoxicated, even though he testified that in his opinion and from his observations, McMillan was intoxicated. The jury, basing their conclusion on the same facts, could conclude otherwise. The jury might reasonably have inferred from plaintiff's evidence (1) that Bill McMillan's bloodshot eyes and pale features were caused by his having just raced; (2) that Bill McMillan was not intoxicated from drinking beer but was rather "mad" and angry at being illegally

forced out of the race by another driver; (3) that the girl with the plaintiff was Bill McMillan's girl friend since she introduced McMillan and the plaintiff and at the first confrontation defendant acted unfriendly and "smart" toward plaintiff; and (4) that McMillan was provoked by the conduct of his girl friend since he had some words with her and struck her in the face.

The cause was properly submitted to the jury and its verdict is supported by the evidence. Therefore, we find that the trial court properly denied plaintiff's motions for a directed verdict and judgment notwithstanding the verdict.

Plaintiff also contends that the trial court erred in refusing to give his jury instruction No. 20, IPI No. 5.01, which if given would have informed the jury that it could infer that testimony of witnesses not called would be adverse if the witnesses were under the control of the party and if the witnesses were not equally available to the adverse party. Plaintiff argues that this instruction was tendered because defendant's counsel repeatedly stated in his opening and closing arguments that the defendant was not present at the time of the occurrence and knew nothing about it, but at no time did the defendant produce any agent, servant, employee or officer of the company to testify that they knew nothing about this incident.

From our review of the record, the only employee of the defendant who may have served beer to McMillan and plaintiff during the evening of May 22, 1966, was Carl Werner, and he was called as a witness for the plaintiff. However, Werner testified that he did not see any altercation between the plaintiff and McMillan, nor could he specifically remember the incidents of May 22, 1966, including the serving of beer to McMillan.

█ █ Within this record the plaintiff has failed to show that any other employee (besides Werner), officer or agent employed by the defendant was present or had

33

any knowledge relevant to the plaintiff's cause of action. Furthermore, there is no showing by plaintiff that any witness or witnesses having relevant knowledge of this occurrence were within defendant's power to produce at the time of trial and that defendant failed to produce them without justification. The trial court should have a wide discretion in the giving of this instruction (Hildebrand v. Baltimore & O. R. Co., 41 Ill App2d 217, 190 NE2d 630) and we find that in the instant case the trial court properly exercised its discretion in refusing to give the requested instruction.

The judgment is affirmed.

Affirmed.

STAMOS, P. J. and ENGLISH, J., concur.