KATHLEEN R. TORREZ, Adm'rx of the Estate of Phillip Torrez, Deceased, Plaintiff-Appellee, *v.* DR. V. RAAG, Defendant-Appellant.

Second District (2nd Division)   No. 75-13

Opinion filed November 15, 1976.

Gates W. Clancy and James S. Mills, both of Geneva, for appellant.

Brody & Gore and Gerald M. Chapman, both of Chicago, for appellee.

Mr. JUSTICE DIXON delivered the opinion of the court:

This is an appeal from an order granting a new trial. Plaintiff, as administratrix of her husband's estate, brought suit against the defendant doctor for wrongful death, and the jury found in favor of the doctor. Following a post-trial motion filed by plaintiff, the trial court ordered a new trial on all issues. We granted defendant leave to appeal from that order.

The plaintiff's proof at trial showed that plaintiff's decedent first consulted defendant doctor in February 1970 when Mr. Torrez' only complaint was heartburn. Mr. Torrez next saw Dr. Raag in February 1971

in the hospital when he had suffered a fracture of his ankle; at that time routine laboratory tests, including urinalysis, were ordered by Dr. Raag, and the results were all normal. A medical history was taken by Dr. Raag at that time, revealing that Mr. Torrez' father had diabetes. Pursuant to instructions, Mr. Torrez returned to see Dr. Raag one month later to check the cast. The patient complained of pain when moving the leg and of a weight gain; the cast was found to be in good shape.

On April 21, 1971, the patient's wife called defendant, saying that she thought her husband looked thinner in the face, had stomach flu and that he was complaining of feeling weak and tired, being thirsty and requiring frequent urination, and of having a cramping abdominal pain. The patient came to the doctor's office the next day, April 22, at which time a physical examination was performed. Mr. Torrez was asked at that time to supply a urine sample, but he told Dr. Raag he was unable to void urine. His leg was cyanotic, showing some darkening. Dr. Raag diagnosed possible hepatitis at that time. A possible urinary infection was also considered because of the frequent urination. Medication was prescribed for this possibility. The woman who accompanied him was asked to bring a urine specimen first thing next morning due to his inability to void at that time. It was never received.

Although the testimony is not completely clear, it appears that the plaintiff called the doctor the next evening (April 23) to say that her husband was turning yellow and that he wasn't feeling any better. At that point, the doctor advised her to take him to the hospital. The doctor admitted the patient by telephone, and did not at that time order either blood tests or a urinalysis.

Dr. Raag saw Mr. Torrez early the next morning; the patient's admitting history showed abdominal pain and vomiting with fever, thirst and general malaise. The doctor noted that the patient had developed yellow eyes. Dr. Raag then ordered a blood test, but did not order that the test be done immediately as opposed to routinely. Dr. Raag did not order a urine sugar test which could have been completed within five minutes. The result of the blood test was not available until 4 p.m., at which time it indicated that the blood sugar was extremely high and that the patient was suffering from diabetes. Insulin was immediately given to the patient, but he went into a diabetic coma and died at 5:30 p.m. There was no dispute that the cause of death was fulminating diabetes.

Plaintiff called Dr. Bryce Buckingham, a practicing physician in Chicago as an expert witness. He testified that diabetes could have been diagnosed or at the very least suspected as early as the plaintiff's decedent's office examination with the defendant, Dr. Raag, on April 22. The basis for his opinion was the family history of diabetes and the complaints made of thirst, frequency of urination, and weight loss.

Furthermore, Dr. Buckingham testified that on April 23, the date the plaintiff's decedent was admitted to the hospital, the diagnosis of diabetes should have and could have been made which would have been confirmed by appropriate laboratory procedure. In his opinion, if the plaintiff's decedent would have received the proper treatment of insulin and intravenous fluids within hours after admission, he would be alive today. He further stated that not having insulin for 19 hours after admission is not proper treatment for a diabetic.

On cross-examination, Dr. Buckingham testified that the treatment that he indicated should have been given, was treatment also acceptable for a person suffering from hepatitis. He further testified that a urinary sugar determination should have been done on April 22, 1971, and certainly no later than his entry into the hospital on April 23, 1971. The responsibility of making the diagnosis and ordering the tests was that of the attending physician. A blood glucose would have taken only 20 minutes to one half hour to do and a urinalysis could have been done with a dip stick or a clinitest in a matter of seconds. The tests should have been given on the evening he was admitted and no later than the following morning. The attending doctor should have immediately ordered insulin and large doses of intravenous fluids.

Dr. Buckingham acknowledged on cross-examination that the enlarged liver shown on autopsy was a sign of liver disease; and that the intravenous feeding and other treatment given the decedent could be acceptable treatment for hepatitis.

Dr. Jerome Stoker, who also treated the deceased, was called on behalf of the defendant. He testified that hepatitis is an inflammatory disease of the liver. Symptoms are fever, weakness, usually abdominal pain, often nausea, vomiting with dehydration as a result, malaise. Treatment is bed rest, intravenous feeding including glucose and water. It is a liver disease. It can be mild or severe and fulminating. Jaundice or yellowing is a development of the disease. It is first visible in the white of the eyeball.

Dr. Stoker had been called in on April 24, 1971, on Mr. Torrez' case after the tests were in and he diagnosed diabetic acidosis and fulminating diabetes. A family history of diabetes was shown in this case. Thirst and extreme urination are classic symptoms of diabetes. Malaise or weakness is found. There was an overlapping of symptoms here, however. He further testified that large doses of insulin even on the morning after admission would have aided Mr. Torrez.

Dr. James Dunphy, a Naperville physician, also testified as an expert witness for the defendant. He also testified to the symptoms and treatment of hepatitis. In response to the hypothetical question, Dr. Dunphy said hepatitis was a reasonable diagnosis. He stated that there was no reason to do an emergency blood sugar test on the night of

admission, and that it was reasonable to do a routine blood sugar test the morning following admission. He further stated that finding sugar in the urine is no basis for any form of treatment; blood sugar is the factor controlling insulin therapy.

During closing argument, defense counsel stated:

"I am concerned though, and I am seriously concerned, because this man's right to practice medicine by reason of this lawsuit—"

Here counsel was interrupted by an objection which was sustained, the court remarking in the presence of the jury that: '

"It is not an item of dispute here, Mr. Clancy."

No further remarks in this vein were made; no motion for mistrial was made.

The jury returned a verdict for the defendant. The plaintiff's post-trial motion sought a new trial on the grounds that the verdict was against the manifest weight of the evidence and that defense counsel's statement in closing argument was prejudicial. The court set aside the verdict and granted a new trial "taking into account the manifest weight of the evidence, the attitude and demeanor of the witnesses, [and] the arguments of counsel in their closing remarks."

■■  The defendant's contention on appeal is that the court erred in granting a new trial. A motion to set aside a verdict because it is against the weight of the evidence is addressed to the discretion of the court and will not be disturbed by a reviewing court unless an abuse of discretion is shown. (58 Am. Jur. 2d *New Trials* §139 (1971).) A trial court is allowed greater latitude in granting a new trial than in denying one. (*Thomas v. Chicago Transit Authority* (1958), 16 Ill. App. 2d 470, 476.) In reviewing an order of the trial court granting a new trial where the weight of the evidence is involved, the reviewing court will not disturb the order in the absence of an affirmative showing of a clear abuse of discretion. *Goodman v. Motor Products Corp.* (1956), 9 Ill. App. 2d 57, 86; *Chambers v. Chambers* (1969), 107 Ill. App. 2d 456, 459.

However, a verdict will not be set aside merely because the jury could have found differently, or because judges feel that other conclusions would be more reasonable. (*Lindroth v. Walgreen Co.* (1950), 407 Ill. 121, 135.) Jury determinations can be set aside only when the trial court is clearly satisfied that they were occasioned by passion or prejudice or found to be wholly unwarranted from the manifest weight of the evidence. *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 623; *Morella v. Melrose Park Cab Co.* (1965), 65 Ill. App. 2d 175, 183.

On the basis of the evidence presented at trial this is a close case. There was perhaps enough evidence introduced by the defendant and other expert witnesses testifying on his behalf such that the jury's finding in the

defendant's favor was not wholly unwarranted by the evidence. However, defendant's own counsel injected into this close case the element of a prejudicial statement in closing argument, and the trial court clearly considered the effect of this as well as the manifest weight of the evidence when granting a new trial.

Our review of Illinois law does not disclose any cases in which our courts have had to determine the propriety of argument directing the jury's attention to the effect of an adverse verdict upon the physician's reputation and ability to practice. Other courts have considered the question, but there is no uniformity of opinion. (See Annot., 74 A.L.R. 2d 662-63 (1960).) Jury instructions that the jury could weigh their determinations of negligence and proximate cause against the effect of their findings on the doctor's professional reputation have been held to be reversible error. (*Stauf v. Holden* (Fla. 1957), 94 So. 2d 361, 74 A.L.R. 2d 658; *DeLaughter v. Womack* (1964), 250 Miss. 190, 164 So. 2d 762.) A Kansas court has held that argument that a verdict against a doctor would injure his character did nor result in a verdict based on passion or prejudice when the court instructed the jury to disregard the remark, no motion for a mistrial was made, nor was the matter further raised until the motion for a new trial was filed. (*Brown v. Hardin* (1966), 197 Kan. 519, 419 P.2d 912.) However, a New York court set aside a verdict in favor of a nurse-anesthetist because of her attorney's questions and closing argument that her future was involved and that the jury was not to brand her a malpracticer or to destroy her future. The reviewing court found that even though the jury was warned that it wasn't their function to determine the future result of their verdict and that they weren't called upon to hurt her future, the effect of the remarks could not be erased. *Weinstein v. Prostkoff* (1959), 23 Misc. 2d 376, 191 N.Y.S. 2d 310.

■■ Although defense counsel's remark in the instant case was not completed, nevertheless what he was trying to say was clearly conveyed to the jury. Although the plaintiff's objection was promptly sustained, an improper element was injected into the case. We do not feel that plaintiff's failure to move for a mistrial renders her unable to cite the prejudicial remark as a ground for a new trial. In ruling on the motion for a new trial, the court found this remark to have had a prejudicial effect on the jury. The trial court is in a better position than a reviewing court to determine the prejudicial effect, if any, of a remark made during argument, and unless clearly an abuse of discretion, its ruling should be upheld. *Elizer v. Louisville & Nashville R.R. Co.* (1970) 128 Ill. App. 2d 249, 254; *Chicago v. Chicago Title & Trust Co.*, 331 Ill. 322.

■■ We do not feel that the trial court abused its discretion in finding the remark to have prejudiced the jury, particularly in view of the close

784

nature of the evidence in this case, and we therefore do not find that the court abused its discretion in ordering a new trial since there was a showing that the verdict, though perhaps not wholly unwarranted by the evidence, resulted from passion or prejudice. We therefore affirm the order of the trial court granting a new trial of this cause.

Order affirmed; new trial granted.

T. J. MORAN, P. J., and RECHENMACHER, J., concur.