DONNA M. CLIFTON, Adm'r of the Estate of Michael A. Clifton, Deceased, Indiv. and for the use and benefit of Keith A. Clifton, a Minor, Plaintiff-Appellant, *v.* FRANK J. NARDI, Defendant-Appellee.

First District (2nd Division) No. 77-189

Opinion filed October 17, 1978.—Rehearing denied November 2, 1978.

Marshall E. LeSueur, of Finn, LeSueur and Challos, of Chicago, for appellant.

Heineke & Schrader, of Chicago, for appellee.

Mr. JUSTICE PERLIN delivered the opinion of the court:

Plaintiff, Donna M. Clifton, brought an action on behalf of herself and minor child under the Dramshop Act (Ill. Rev. Stat. 1975, ch. 43, par. 135)

to recover for injuries to means of support resulting from the death of plaintiff's husband. On November 21, 1972, plaintiff's husband died of asphyxiation, allegedly after becoming intoxicated in a tavern owned and operated by defendant, Frank Nardi. The jury returned a verdict for defendant, and the court entered judgment thereon. Plaintiff's motions for judgment notwithstanding the verdict and for new trial were denied. Plaintiff appeals.

The following issues are presented for review: (1) whether the trial court erred in denying plaintiff's motions for judgment notwithstanding the verdict and for new trial; (2) whether the trial court erred in giving the jury instructions; and (3) whether the trial court erred in refusing to permit plaintiff to include the Illinois Pattern Jury Instruction definition in a hypothetical question propounded to an expert witness.

We affirm.

The following facts were adduced at trial: Defendant, Frank J. Nardi, owned the premises at 3108 West 59th Street in Chicago, Illinois, upon which he operated a neighborhood tavern known as Frankie and Johnny's. Walter Kosary owned the parking lot adjacent to defendant's tavern and owned and operated a funeral parlor located east of the tavern. Customers of the tavern sometimes used Kosary's parking lot.

On November 20, 1972, defendant worked in the tavern from noon until closing time, which was 2 a.m., and prepared and served all the drinks for the customers. Phillip Cardella worked in the tavern from 9 to 11:30 p.m. washing glasses. Decedent came into the tavern on November 20, 1972, at about 5 or 5:30 p.m. and stayed until 1:45 a.m. Defendant testified that decedent had approximately three drinks of whiskey and 7-Up per hour, and that each drink contained one ounce of whiskey. Defendant testified that he met decedent about one year prior to his death, and that during the year decedent came into the tavern three or four times a week after work and would stay until closing.

Clement Lewandowski testified that on November 20, 1972, he arrived at the tavern at either 4:30 or 6:30 p.m. and remained until 12:30 a.m. He saw decedent at the bar, drinking a whiskey and 7-Up, and he sat at the bar next to decedent. During the time there, Lewandowski had one or two drinks of whiskey and water per hour, and he estimated that decedent had one or two drinks per hour also. Lewandowski testified that at about 10:30 p.m. two women, Nancy Kelley and Rita Furlong, came into the bar and sat with him and decedent. Lewandowski left the tavern alone about 12:30 p.m., but decedent and the two women remained. Lewandowski testified that when he left, decedent seemed normal, and there was nothing unusual about decedent's speech or actions.

Rita Furlong testified that on November 20, 1972, she arrived at Frankie

and Johnny's tavern at about 8 p.m. and joined decedent, Nancy Kelley and Clem Lewandowski at the bar. She left about 12:30 a.m. and drove home alone in her car. Ms. Furlong stated that she consumed three or four drinks during the four hours she was at the tavern, and she did not think that decedent was drinking at a rate of three or four drinks per hour. She testified that she did not notice anything unusual about decedent's conversation, and that "he seemed perfectly fine" when she left the tavern.

Defendant testified that the two women who were with decedent left shortly before decedent. Decedent left the tavern about 1:45 a.m., and defendant followed him out the door. Defendant saw decedent walk toward the parking lot next to his tavern. Defendant stated that decedent was not intoxicated when he left the tavern. Phillip Cardella also testified that he did not notice anything unusual about decedent on the night of November 20, 1972.

Walter Kosary testified that between 1:30 and 2 a.m. on November 21, 1972, he heard a car horn and loud talking in his parking lot, and he looked out his apartment window, which was above the funeral parlor. Kosary observed decedent standing near a tan automobile talking to two women who were occupying the car. The tan automobile then drove away, and decedent entered his automobile and started the engine. Thereafter, Kosary did not continue looking out of the window.

At about 8:30 a.m. on November 21, 1972, Kosary went out to the parking lot to take his children to school. He observed decedent's automobile in the same place as the night before. The engine was running, and the windows were fogged up. At the same time Mr. Greenwood, an employee of the tavern, also observed the automobile. Greenwood and Kosary opened the door and observed decedent lying on the front seat. Kosary observed no breathing or pulse, and Greenwood called the fire department. Police and fire department personnel arrived and took the body to Holy Cross Hospital, where decedent was pronounced dead.

Lewandowski and Kosary both testified that they had on previous occasions observed decedent asleep in his car while parked in Kosary's lot and after he had been drinking in defendant's tavern. Lewandowski stated that on at least two occasions he found decedent lying on the front seat of his car, but that the engine was not running on either occasion.

Richard Law, a police officer with the Chicago Police Department, testified that he was assigned to investigate decedent's death. He observed decedent's body at Holy Cross Hospital and noticed no marks of violence. Law also viewed the automobile in the parking lot and found no trace of violence, foul play or suicide. Law testified that he started the engine and could smell fumes in the car. Law stated that the tail pipe was

broken so that it did not extend completely to the rear of the automobile, and that exhaust fumes were hanging underneath the car and coming inside the car.

Decedent's body was taken to the Cook County Morgue where an autopsy was performed. Dr. George Christopoulos, chief toxicologist for the Cook County Coroner, testified that biological samples were removed from the body and examined by him or by personnel under his supervision for the presence of alcohol and carbon monoxide. Standard accepted methodologies were employed in all tests. Two separate tests conducted on the blood samples showed an average of 159 milligrams percent of alcohol in the blood. Dr. Christopoulos testified that a level of 100 milligrams percent of alcohol is recognized as intoxication, but that a level of 159 would not be fatal. Anywhere upwards from 400 milligrams percent of alcohol would be fatal.

Two tests for carbon monoxide showed that 71 percent of the hemoglobin was saturated with carbon monoxide and could not absorb oxygen. Dr. Christopoulos testified that most toxicologists believe that a normal person can become unconscious at a saturation of 15 to 20 percent but could sustain a saturation of 30 to 60 percent. However, a saturation over 60 percent in any case would produce death. Dr. Christopoulos testified that absorption of carbon monoxide is very quick, and that it could take approximately 5 to 15 minutes to absorb 71 percent. A body does not continue to absorb carbon monoxide or alcohol into the blood after death, and blood alcohol and carbon monoxide combined could accelerate death.

Edward Shalgos, pathologist for Cook County Coroner, performed the autopsy on decedent's body and removed the samples which were referred to the toxicology department. Dr. Shalgos testified that the outer body showed a pinkish coloration, and that there was an extreme pinkish coloration of the muscle and fat tissues internally, which is indicative of carbon monoxide poisoning. The stomach also showed evidence of carbon monoxide poisoning. The body had a sweet odor indicating that the individual had imbibed alcohol. Dr. Shalgos stated that in his opinion the individual died within one or two hours after getting into the automobile, that the cause of death was carbon monoxide poisoning, and that the individual was intoxicated at the time of death. Dr. Shalgos testified that 159 milligrams percent of alcohol is legal intoxication, and that with a level of 159 a person might appear to walk and act normally, but tests would show significant appearances of intoxication.

Plaintiff testified that she was decedent's widow, and that there was one child born of the marriage on May 20, 1968. At the time of his death decedent was working as a patrolman with the Chicago Police Department. Plaintiff testified as to decedent's gross earnings and the

amount decedent spent to support his wife and child. James Craig, a police officer assigned to personnel section, testified as to decedent's gross salary and changes in the salary of patrolmen since decedent's death.

The jury returned a verdict for defendant, and the court entered judgment thereon. Plaintiff's post-trial motions for judgment notwithstanding the verdict and for new trial were denied.

Plaintiff initially contends that the trial court erred in denying the motions for judgment notwithstanding the verdict and for new trial. Plaintiff contends that the jury erroneously determined either that decedent was not intoxicated or that intoxication was not the proximate cause of the injury.

■■■ The rule of *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, regarding when a judgment notwithstanding the verdict should be granted applies to a dramshop action. (*Krepfl v. Burke* (1st Dist. 1974), 24 Ill. App. 3d 173, 321 N.E.2d 30; *Maynard v. Irving Davis Co.* (1st Dist. 1970), 122 Ill. App. 2d 28, 257 N.E.2d 604.) Under *Pedrick* a judgment notwithstanding the verdict should be entered "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." We find that the trial court did not err in denying plaintiff's motion for judgment notwithstanding the verdict since there were probative facts to support the jury's verdict. Although there was conflicting testimony on the questions of intoxication and causation, these were questions of fact which were properly submitted to the jury. (*Weiner v. Trasatti* (1st Dist. 1974), 19 Ill. App. 3d 240, 311 N.E.2d 313; *Caruso v. Kazense* (3d Dist. 1974), 20 Ill. App. 3d 695, 313 N.E.2d 689; *Navarro v. Lerman* (1st Dist. 1964), 48 Ill. App. 2d 27, 198 N.E.2d 159.) When the evidence is examined in a light most favorable to defendant, it cannot be concluded that a verdict for defendant could never stand.

■■■ On a motion for new trial, a court must weigh the evidence, and a new trial will be granted if the verdict is contrary to the manifest weight of the evidence. (*Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 310, 356 N.E.2d 32.) It is well established that, where the evidence is conflicting, a verdict is contrary to the manifest weight of the evidence when an opposite conclusion is clearly evident and the verdict is palpably erroneous. (*Kincl v. Hycel, Inc.* (1st Dist. 1977), 56 Ill. App. 3d 772, 372 N.E.2d 385; *Raabe v. Maushak* (2d Dist. 1977), 55 Ill. App. 3d 169, 371 N.E.2d 96.) A new trial will not be granted by a court of review where such determination entails a mere substitution of judgment for that of the jury. (*Conley v. Kuerner* (1st Dist. 1967), 82 Ill. App. 2d 329, 333, 226 N.E.2d 451.) It is not sufficient that the jury could have found differently or that judges feel other conclusions may be more reasonable. (*Torrez v.*

*Raag* (2d Dist. 1976), 43 Ill. App. 3d 779, 782, 357 N.E.2d 632.) It is for the jury alone to determine the credibility of the witnesses and the weight of the evidence on disputed questions of fact. *Kincl v. Hycel, Inc.*

■■ Our review of the record shows that both plaintiff and defendant presented evidence tending to support their own theories of the case. Since there is evidence which, if believed, supports the verdict in favor of defendant, we will not disturb the jury's determination. Thus, we find that the trial court did not err in denying plaintiff's motion for new trial.

■■■ Plaintiff next contends that the trial court erred in giving the jury instructions. Article VI, section 14, of the Illinois Liquor Control Act (Ill. Rev. Stat. 1971, ch. 43, par. 135) provides for two separate causes of action against any person who by selling or giving alcoholic liquor causes the intoxication of any person and such intoxication causes injury. One action is for injury to person, property or means of support by any intoxicated person ("by" action), and the other is an action for injury to means of support arising as a consequence of the intoxication of any person ("in consequence of" action). (Ill. Rev. Stat. 1971, ch. 43, par. 135; *Nelson v. Araiza* (1978), 69 Ill. 2d 534, 540, 372 N.E.2d 637.) In a "by" action plaintiff must show that the direct affirmative act of an intoxicated person has a causal connection with the injuries sustained. (*Hernandez v. Diaz* (1964), 31 Ill. 2d 393, 202 N.E.2d 9.) The direct affirmative act must be tortious in character. (*McDonald v. Risch* (1968), 41 Ill. 2d 242, 242 N.E.2d 245.) In an "in consequence of" action, plaintiff must show that the intoxication is the proximate cause of the injury to means of support. (*Danhof v. Osborne* (1957), 11 Ill. 2d 77, 142 N.E.2d 20.) The court in *Overocker v. Retoff* (3d Dist. 1968), 93 Ill. App. 2d 11, 16, 234 N.E.2d 820, stated that "[a] typical 'in consequence' type of action involves a situation where the husband becomes intoxicated and, due to such intoxication, injures himself and thus causes injury to the means of support of his wife."

Plaintiff had tendered an instruction defining the elements of proof in a "by" type of action. Defendant objected and tendered an instruction defining the elements of proof in an "in consequence of" type of action, which included the proposition that plaintiff had the burden of proving that decedent's intoxication was the proximate cause of his death. The court considered both instructions and after both attorneys argued, the court refused plaintiff's instruction and gave defendant's instruction defining the elements of an "in consequence of" action. The court also gave an instruction tendered by defendant defining the term "proximate cause." Plaintiff did not object to this instruction.

■■ Plaintiff contends that the case at bar is a "by" action, and she was not required to show that intoxication was the proximate cause of the injury. Plaintiff argues that decedent's conduct in exposing himself to carbon monoxide is a direct affirmative act by an intoxicated person. However,

no evidence was presented to show that decedent was aware of the defect in his automobile and deliberately exposed himself. The record indicates that there was no evidence of suicide. We conclude that the action was an "in consequence of" action since there was no direct affirmative act by decedent. Thus, the court did not err in giving the jury instructions.

Lastly, plaintiff contends that the trial court erred in refusing to permit plaintiff to include the Illinois Pattern Jury Instruction (hereinafter IPI) definition of intoxication in a hypothetical question propounded to an expert witness.

Plaintiff requested Dr. Shalgos to assume a hypothetical person, who had all the characteristics of decedent, and to express his opinion as to whether the person was intoxicated at the time of his death. Plaintiff proposed to have Dr. Shalgos assume for the purpose of answering the hypothetical question that the definition of intoxication was as expressed in IPI Civil No. 150.15 (2d ed. 1971). Defendant objected to use of the instruction, and the objection was sustained.

■■ It is established that the purpose of instructions is to inform the jury of issues presented, principles of law to be applied and necessary facts to be proved to justify a verdict. (*Winston v. Chicago Transit Authority* (1st Dist. 1971), 2 Ill. App. 3d 151, 276 N.E.2d 65.) Whether a person is intoxicated is a question of fact for the jury, but what constitutes intoxication is a question of law to be defined by the court. (*Grant v. Paluch* (1st Dist. 1965), 61 Ill. App. 2d 247, 210 N.E.2d 35.) It has been held that a hypothetical question as to whether an individual is intoxicated does not invade the province of the jury since the jury must determine the ultimate fact as to whether the death resulted from intoxication. (*Nordhaus v. Marek* (1st Dist. 1943), 317 Ill. App. 351, 45 N.E.2d 993.) It has also been held that it is proper for the court to give the IPI defining intoxication. (*Edenburn v. Riggins* (3d Dist. 1973), 13 Ill. App. 3d 830, 301 N.E.2d 132; *Navarro v. Lerman* (1st Dist. 1964), 48 Ill. App. 2d 27, 198 N.E.2d 159.) However, we have found no case which either allows or forbids use of the instruction in a question to a witness. It does not appear from the record that the court erred or abused its discretion in disallowing use of the IPI definition. The record indicates that Dr. Shalgos would have testified that, on the basis of the IPI definition, the hypothetical person was intoxicated. If this had been allowed, then when the instruction was later given by the court, Dr. Shalgos' testimony would have appeared to the jury to be more credible. This would have been inappropriate since several other witnesses were asked if they had an opinion as to whether decedent was intoxicated, but no other witness was given the IPI definition. Since it is within the province of the court to instruct the jury, it was not error for the court to refuse to permit plaintiff to incorporate the instruction in a hypothetical question.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS, P. J., and DOWNING, J., concur.