DAVID D. BEAN, Plaintiff-Appellee, *v.* VOLKSWAGENWERK AK-
TIENGESELLSCHAFT OF WOLFSBURG, GERMANY, *et al.*, Defendants-
Appellants.

Fifth District No. 81—544

Opinion filed September 21, 1982.

Pope and Driemeyer, of Belleville, and Herzfeld & Rubin, of New York, New York (W. Thomas Coghill, of counsel), for appellants.

Phillip J. Kardis and Robert S. Forbes, both of Alton, for appellee.

JUSTICE HARRISON delivered the opinion of the court:
Defendant Volkswagen (hereinafter referred to collectively as VW) appeals from a $718,000 jury verdict awarded to plaintiff David D. Bean for injuries he sustained in a collision between his 1965 Volkswagen microbus van and a 1972 Ford Maverick. Plaintiff suffered severe and permanent injuries to his feet and lower legs as a result of colliding head-on with the Maverick at a high estimated closing speed. The driver of the Maverick is not a party to this litigation. For the reasons hereinafter stated, we affirm in part and reverse in part the judgment of the circuit court of Madison County.

■■ ■ Defendant requests a directed verdict or, alternatively, a new trial. The standard to be applied to the directing of verdicts is, when viewing all the evidence in its aspect most favorable to the opponent, it so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 509-10, 229 N.E.2d 504.) On a motion for a new trial, the court must weigh the evidence and set aside the verdict, ordering a new trial if the verdict is contrary to the manifest weight of the evidence. (*Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 310, 356 N.E.2d 32.) On appeal, defendant has failed to meet either evidentiary standard of review. We will address each point raised.

■■ First, defendant contends that it was entitled to a directed verdict because it had no legal duty to design a crash-proof vehicle or to design against unreasonable risk of injury. Plaintiff responds that VW failed to use reasonable care in the design and manufacture of its microbus so as to eliminate any unreasonable risk of injury to David Bean. Plaintiff's claim is based on the "crash-worthiness" or "second collision" doctrine. As noted in *Caiazzo v. Volkswagenwerk A.G.* (2d Cir. 1981), 647 F.2d 241, 243, "crash-worthiness" means the protec-

tion that an automobile affords its passengers against injury or death as a result of a collision. The term "second collision" refers to the collision between a passenger and an interior part of the vehicle following the initial impact. Under this theory, the plaintiff does not allege that the particular design defect caused the accident. Rather, he alleges that the defect enhanced those injuries he would already have sustained by virtue of the initial impact. The issue before us, then, is this: does a manufacturer have a duty to design a motor vehicle to avoid subjecting its users to unreasonable risks of harm in a situation in which a faulty design, although not the cause of the accident, produces or enhances the injury received in the accident? See *Huff v. White Motor Corp.* (7th Cir. 1977), 565 F.2d 104, 106.

There are a plethora of "second collision" cases which have uniformly held that, although a manufacturer has no duty to design an accident-proof vehicle, it does have an obligation to "design and construct its product to be reasonably fit for its intended use and to be reasonably free from hidden defects which would render it unsafe for that use." (See *Huff v. White Motor Corp.* (7th Cir. 1977), 565 F.2d 104, 110-11, and cases cited therein.) It has therefore been acknowledged that the sole function of an automobile is not just to provide a means of transportation; it is to provide a means of safe transportation. (*Larsen v. General Motors Corp.* (8th Cir. 1968), 391 F.2d 495, 502.) The jurisdictions agree that a manufacturer should be held to a reasonable degree of care in the design of its vehicle, consonant with the state of the art, so that the effects of accidents are minimized. Thus, the jury, in deciding whether a manufacturer has breached its duty, must take into account not only the welfare of the general public and the harm to the individual plaintiff, but also the industry's market goals, the utility of the vehicle, and the range of the vehicle's intended use. *Dreisonstok v. Volkswagenwerk* (4th Cir. 1974), 489 F.2d 1066, 1073.

■ On appeal, defendant argues that it had no duty to design a vehicle which would have protected plaintiff from a head-on collision at such a high speed. It insists that "nothing short of a James Bond catapult-parachute mechanism" would have saved Mr. Bean from sustaining severe injuries. Plaintiff, however, pointing out that collisions are foreseeable, maintains that VW should have researched and discovered the dangerous propensity of its microbus van to trap the legs of its driver between the metal seat support structure and the front of the vehicle during a head-on collision. Tests to determine and prevent risks incurred in high speed collisions are commonplace in the automobile industry. In addition, plaintiff's expert introduced an alter-

native design which he declared would have reduced the danger and eliminated the type of fractures which Mr. Bean sustained. The expert testified that such a design was technologically feasible in 1965. Defendant failed to sufficiently rebut these assertions. Consequently, viewing the evidence most favorable to Mr. Bean, we find that it does not overwhelmingly favor VW. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 509-10.) Under these circumstances, a directed verdict for Volkswagen would be inappropriate.

Defendant next argues that it was entitled to a directed verdict because plaintiff failed to prove any casual connection between his injuries and the seat support structure of the van. It points out that plaintiff failed to show what injuries would have occurred if an alternate design had been employed. Defendant also insists that plaintiff had the burden of apportioning, or of segregating, those injuries which occurred when his legs were caught between the front of the van and the seat support structure and those injuries which can be attributed to the initial impact with the dashboard of the van.

This is the problem with the litigation of crash-worthiness cases. Except for the instance in which the injuries caused by the design defect are clear and distinct from those caused by the initial collision, the evidence will necessarily include a speculative determination of what actually happened at the time of the collision. (*Caiazzo v. Volkswagenwerk* (2nd Cir. 1981), 647 F.2d 241, 245.) In this suit, the jury was confronted with a complex chain of causation. Plaintiff's theory is that the defect which caused his injuries was the sheet metal seat support structure behind his feet, ankles, and lower legs. He maintained that, but for this structure, the injuries to his legs would not have occurred. He further maintains that the forward position of the driver in the van allowed the setting up of a pincer or viselike closing movement between the front of the van and the solid sheet metal structure under him. On cross-examination of plaintiff's expert, the plaintiff's theory was clarified. The expert explained that the accident involved not two but three impacts. The first impact occurred when the two vehicles collided. The second impact occurred when the occupants crashed forward into the dashboard and steering wheel of the van. The third impact occurred when the passenger seat came forward and crushed the back of the plaintiff's legs in a pincer movement. The expert testified that, in his opinion, the design of the front seat caused the particular spiral fractures for which plaintiff sought recovery, and that these were incurred as a result of the third impact. He stated that the use of seat belts would not have mitigated the injuries. He then detailed an alternate design and assured the court

that it was technologically feasible.

In response to defendant's claim that plaintiff did not apportion his injuries, plaintiff emphasizes that he already apportioned the injuries when he "judiciously selected only those injuries for jury consideration that would be amply supported by the evidence as having been caused by the defect in question." In other words, it is plaintiff's position that all of his leg injuries below the knees occurred as a result of the third impact and can be traced to the defectively designed seat. He did not make a claim for extensive injuries above the knees (including fractured femur, nasal bone, and one of the phalanges of the hand) which may have resulted from the initial impact. Instead, he confined his claim to those injuries that were directly attributable to the third impact. He therefore concludes that the task of apportioning was accomplished by him at the pleading stage. We find that there was adequate evidence to support such a theory. In addition, there was enough testimony linking the injuries with the design defect for us to conclude that none of the claimed injuries below the knees would have occurred if VW had employed the alternate design. Again, viewing all the evidence most favorable to David Bean, it does not overwhelmingly favor defendant Volkswagen. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 509-10.

██ ██ With respect to this issue, defendant also contends that the expert was not competent to testify about the physical or medical consequences of the head-on collision. This contention, however, goes to the weight to be accorded the expert's testimony. (*Nanda v. Ford Motor Co.* (7th Cir. 1974), 509 F.2d 213, 221.) The record shows that both parties belabored the issue of the expert's qualifications in the presence of the jury. After he was declared competent to testify as an expert by the trial judge, the jury was then free to evaluate his conclusions relative to his various fields of expertise. Although his testimony was, to a degree, weakened on cross-examination and later contradicted by the defendant's own experts, still it was for the jury to accord it the proper weight. *Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 424, 328 N.E.2d 301.

The third issue is whether the trial court erroneously overruled defendant's objections to the use of the words "crush injury" in a hypothetical question to plaintiff's expert. Defendant maintains that the trial court's tacit condonation of plaintiff's use of the word "crush" and its various derivatives throughout the trial allowed the jury to base their verdict on a false assumption, *i.e.*, that plaintiff's treating physician had testified that plaintiff's injuries were crush type injuries when, in fact, he had not so testified. From defendant's perspective,

it is significant that the jury made this assumption because it would indicate that plaintiff had proved a crucial element of his case. According to defendant, since plaintiff's theory was that his legs were caught between the front of the van and the defectively designed seat, then plaintiff had to show that his injuries were those normally incurred from this type of trauma. Defendant, of course, maintains that plaintiff's physician never indicated that Mr. Bean sustained crush injuries. However, upon reading the record, we discovered ample evidence from which the jury could have drawn that conclusion. The physician testified that, with respect to the fifth metatarsal of the left foot, it could have been the result of a crushing type force. Several witnesses testified that the plaintiff's legs were "wedged" or "smashed," or that the front of the van was "mashed up against his legs ***." David Bean himself described his left foot as it looked to him in the hospital after the accident by saying it was actually "rounder than your wrist." He stated that the foot looked like it was too narrow to have that many toes sticking on the end of it. The jury heard testimony of this nature from several witnesses. Thus, it was reasonable for plaintiff's counsel to use the words "crush injury" in a hypothetical question describing plaintiff's injuries.

In any event, we do not think it is significant whether the use of the term "crush injury" was objectionable. Plaintiff's theory was not entirely based upon proof that the injuries were crush injuries. He also offered sufficient evidence that the injuries were "spiral fractures" and that they were "rotational" or "twisting" in nature. Plaintiff's physician demonstrated by snapping a piece of chalk in two. He described the resulting break as typical of the type of fracture which would be sustained when a twisting force is applied. Plaintiff's expert stated that the twisting force was due to the sheet metal support structure coming forward to collide with the front of the van. Thus, when weighing all the evidence, we do not think the verdict was contrary to the manifest weight of the evidence. (*Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 310.) The trial court's acquiescense in plaintiff's use of the descriptive term "crush" was harmless and does not warrant a new trial.

■ Defendant next objects to Instruction No. 3, claiming that it invited the jury to speculate as to the proximate cause of plaintiff's enhanced injuries rather than to rely on expert testimony. Instruction No. 3 merely stated that a fact may be proved by circumstantial evidence. It then defined circumstantial evidence as "the proof of facts or circumstances which give rise to a reasonable inference of the truth of the facts sought to be proved." We do not read this broad

definition as an invitation to the jury to speculate, nor do we see how it would undermine their obligation to listen to and evaluate expert testimony. The objection is not well taken.

Likewise, their challenge to Instructions No. 11 and No. 14A are groundless. Defendant maintains that these instructions misled the jury into believing that VW could be held liable for all of plaintiff's injuries rather than for his enhanced injuries alone. In short, it objected because the instructions did not require the jury to apportion damages. We need not dwell on this challenge because our earlier discussion of apportionment, and our conclusion that plaintiff already apportioned his injuries, applies here as well. It is plain that the jury adopted plaintiff's approach, believing that the design defect was responsible for all the injuries to plaintiff's lower legs and that they occurred at the time of the third impact.

■ Defendant next claims that the court should have granted a mistrial because of three prejudicial newspaper articles which appeared during the course of the litigation. However, the trial judge offered the defendant an opportunity to conduct further *voir dire* of the jurors to determine if any of them had read the articles. The defendant chose not to do so. Consequently, he cannot now claim he was denied a fair trial. (See *In re Estate of Rupinski* (1970), 131 Ill. App. 2d 393, 399, 266 N.E.2d 190.) Further, this is not a situation in which facts outside the record were brought to the jury's attention. The articles were mere attempts to summarize the evidence offered at trial and to report facts already in evidence. As such, we cannot say the trial court abused its discretion by denying defendant's motion for a mistrial. *McKasson v. Zimmer Manufacturing Co.* (1973), 12 Ill. App. 3d 429, 437, 299 N.E.2d 38.

■ The defendant also argues that it was an abuse of discretion for the trial judge to refuse defendant's amendment to its post-trial motion. The court entered judgment for plaintiff on May 28, 1981. Defendant filed its post-trial motion on June 24 and a hearing was set for August 3. On that date, defendant filed a motion to amend its post-trial motion in order to allege that a request had been made by a jury member during their deliberations. The bailiffs apparently never communicated the request to the judge. Defendant maintains that this constituted reversible error. The court allowed the amendment, but at the hearing it reserved a final ruling until both parties had filed supportive affidavits. Defendant then filed an affidavit of the juror who had made the request. Plaintiff filed counteraffidavits of the bailiffs who had been on duty. The bailiffs stated that they did not recall the event in question. Plaintiff also filed an affidavit from the juror who

made the request. This affidavit stated that defense counsel had contacted her very soon after the verdict was entered, early in June. Plaintiff argues that defense counsel was aware of the basis for his amendment at that time. Thus, we agree with plaintiff that defendant could easily have included the amended portion in his original motion filed on June 24. Defendant does not explain why he waited until August 3 to bring the matter to the court's attention. In addition, the trial judge, in whose discretion it would have been to grant the juror's request if it had been communicated, determined that the bailiffs' oversight did not harm defendant nor did it deprive him of a fair trial. We must agree. Thus, the trial judge did not abuse his discretion by striking defendant's amendment to his post-trial motion. See *City of Chicago v. Greene* (1970), 47 Ill. 2d 30, 33, 264 N.E.2d 163.

 The defendant's next contention of error is that the verdict of the jury is grossly excessive. We are reluctant to disturb the amount of the award absent a showing by defendant that the jury acted from passion or prejudice. (*Montgomery v. Terminal R.R. Association* (1979), 73 Ill. App. 3d 650, 655, 392 N.E.2d 77.) No such showing was made.

The verdict, will, however, be reduced in accordance with the recent supreme court case *Powers v. Illinois Central Gulf R.R. Co.* (1982), 91 Ill. 2d 375. There, the court held that a jury should no longer be instructed to consider the nature, extent and duration of the plaintiff's injury as a separate and compensable element of damage in addition to other elements of damage. Thus, that portion of the judgment which was attributable to the nature, extent and duration of the injury, $176,000, is hereby reversed.

We have reviewed the record, and found that defendant's remaining contentions have no basis and, therefore, do not merit discussion. (*Monroe County Water Cooperative v. City of Waterloo* (1982), 107 Ill. App. 3d 477, 482, 437 N.E.2d 1237.) Accordingly, we affirm in part and reverse in part the judgment of the circuit court of Madison County.

Affirmed in part, reversed in part.

JONES and KASSERMAN, JJ., concur.