JUSTIN J. TEDROWE, Ex'r of the Estate of Susanne L. Rocks, Deceased, Plaintiff-Appellant, v. BURLINGTON NORTHERN, INC., Defendant-Appellee.

First District (1st Division)   No. 85—1396

Opinion filed July 20, 1987.

Schmidt & O'Brien and William J. Harte, Ltd., both of Chicago (Philip J. Schmidt and William J. Harte, of counsel), for appellant.

Kenneth J. Wysoglad, Michael L. Sazdanoff, and Robert J. Prendergast, all of Chicago, for appellee.

PRESIDING JUSTICE QUINLAN delivered the opinion of the court:

The plaintiff, Justin J. Tedrowe, executor of the estate of Susanne L. Rocks, brought this wrongful death action against defendant Burlington Northern on behalf of the estate of Susanne Rocks, the driver of an automobile who was fatally injured by a commuter train in a railroad-crossing accident. Following 16 days of trial and the testimony of 41 witnesses, the jury rendered a verdict and two special interrogatories for the defendant and against the plaintiff. Plaintiff's post-trial motion for judgment notwithstanding the verdict or, in the alternative, a new trial was denied and judgment was entered on the verdict. The plaintiff contends on appeal that the trial court erred in refusing to set aside the jury verdict and denying plaintiff's motion for a new trial.

On the morning of January 13, 1981, Susanne Rocks (decedent) approached the Burlington Northern railroad crossing in Westmont, Illinois, as she drove to work. Witnesses testified that she stopped at the stop sign on eastbound Burlington Avenue and then turned right to proceed southbound on Cass Avenue where it intersects with the train tracks. The Westmont commuter passenger station is located west of Cass Avenue and includes a closed shelter, windbreaks, benches, and a bicycle rack. There are three separate tracks at the Westmont station. The southernmost track is for local eastbound commuter trains; the middle track is for express trains to and from the city during rush hours; and the northernmost track is for local westbound commuter trains. Decedent's automobile was struck by an eastbound express train traveling on the middle track at 47 miles per hour.

Plaintiff relies heavily on the testimony of George Filip, who was driving a van directly behind decedent. Filip testified that Mrs. Rocks was stopped at the crossing gate for a minute or two before the gate rose two or three feet above the roof of her car and that she then proceeded onto the tracks. Mr. Filip stated that he was about to fol-

low her when the gate fell sharply back to a horizontal position in front of his van. However, Filip's testimony was inconsistent with that of other witnesses, and he was not sure whether a local commuter train was already in the station when the accident occurred and whether the front car of the train that hit decedent's automobile was a locomotive. Plaintiff, however, in support of Mr. Filip's testimony, pointed to the fact that many witnesses did not see the approaching express train and claimed this also supported his additional contention that there were visual obstructions to the view of the approaching train. Of course, an equally plausible explanation, as observed by the trial court, was that the witnesses were inattentive to the scene prior to the accident and merely did not notice the train before the accident.

The testimony as to what happened when decedent reached the crossing also varied. One witness, Robert Foley, testified that as he walked across Cass Avenue on the north side of the tracks, he observed ringing bells, flashing signals, and lowered gates in the crossing area. As he entered the crosswalk on Cass Avenue, he passed directly in front of the lowered crossing gates. Foley testified that he observed the decedent's automobile, which he expected to stop at the crosswalk, but which did not stop and instead drove right past him and through the lowered crossing gate. Mr. Foley heard a cracking sound and then observed the gate scraping decedent's windshield as it passed over her car. Foley's testimony was corroborated by the testimony of mechanical engineer Cal Adelman.

Mr. Adelman, who also testified at trial, stated that he was employed by Burlington Northern to run an experiment on the lowered gates to determine if they could be bumped up and over an automobile. In 8 out of 10 tests, when an automobile of the same model and make as decedent's bumped the lowered gate, the gate bounced up and over the car and then returned to a horizontal position. Other eyewitnesses testified that they saw the gate rise but they were unsure whether the decedent's automobile hit the gate before it began to rise.

Burlington Northern presented inspection records to show that the signals were inspected weekly, maintained on a seasonal basis, and periodically tested for insulation resistance. Ordinarily, when a train enters the track near a crossing, it interrupts the electromagnetic relays which, in turn, activate the signal circuits. Once activated, the gates are lowered and then held horizontal only by the force of gravity. The crossing signals stop flashing when the gates on both sides of the tracks are vertical. One of plaintiff's theories was that negligent

maintenance had caused a temporary short circuit in the resistors which permitted the gate in front of decedent's automobile to rise. Also, plaintiff pointed out that the Illinois Commerce Commission (ICC) General Order 138 imposed a duty on all railroads to maintain, operate and renew crossing signals. However, it should also be noted that in answering a special interrogatory, the jury specifically found that defendant Burlington Northern was not guilty of any violation of ICC rules which proximately caused the death of Mrs. Rock.

Additionally, plaintiff argued in the trial court, and also argues here, that visual obstructions on the Burlington Northern property were a proximate cause of decedent's death because Mrs. Rocks' view of the approaching train was blocked at the time of the accident; thus, she could not see the approaching train when she entered the crossing area. While there was some testimony that decedent looked to the west toward the approaching train just prior to impact, no witness testified that the decedent looked to the west before proceeding onto the tracks. Again, the plaintiff notes that the ICC General Order 138 imposed a duty on all railroads to keep right-of-ways reasonably clear of trees and unnecessary permanent obstructions which would materially obscure the view of approaching trains to travelers on the highway. However, as stated, there was no testimony that plaintiff even looked in the direction of the train immediately prior to the time she proceeded onto the tracks. Additionally, the jury, in again answering a special interrogatory, expressly found defendant Burlington Northern not guilty of a violation of ICC rules which the plaintiff had alleged was a proximate cause of decedent's injury.

■ To reverse a denial of a motion for a new trial on appeal requires a showing that the trial court abused its discretion. (*Levenson v. Lake-To-Lake Dairy Cooperative Co.* (1979), 76 Ill. App. 3d 526, 394 N.E.2d 1359.) Plaintiff claims that the trial court here erred in the standard it applied to the motion for a new trial; that it was also error to refuse plaintiff's tendered Illinois Pattern Jury Instruction, Civil, No. 60.01 (2d ed. 1971) (IPI Civil 2d) and non-IPI jury instruction No. 17; and that the defendant's 8-by-10 photograph of a train should not have been admitted into evidence.

■ Plaintiff's first argument is that the trial court erroneously applied the "manifest weight of the evidence" standard instead of the "preponderance of the evidence" standard in ruling on plaintiff's motion for a new trial. The First District Appellate Court, unfortunately, has inconsistently applied a "preponderance of the evidence" standard to motions for new trials generally based on the theory that the trial court observes the evidence first hand, as does the jury, and should,

therefore, more appropriately use the same standard for review of the jury's decision as the jury has been instructed to use. For example, in *Spankroy v. Alesky* (1977), 45 Ill. App. 3d 432, 359 N.E.2d 1078, the trial judge set aside the jury verdict in the defendant's favor and granted a new trial based on its determination, as the trial judge stated, that he found the evidence of defendant's negligence compelling and "the verdict of the jury missed the point." On appeal our court affirmed, stating:

> "Since a jury is instructed to use the preponderance of the evidence test, in our opinion, the trial court in reviewing the jury determination should use the same standard of review. This is not to say that the trial court may set aside a verdict where the factual controversy could be resolved in favor of either party. A motion for a new trial is not an opportunity for the trial court to substitute its opinion for the jury's—this would be an abuse of discretion. [Citations.] Where in the judgment of the trial judge the evidence presented preponderates in the losing party's favor so that it appears the verdict was the result of some bias, prejudice, or misconception of the evidence on the part of the jury, [in that circumstance] the trial court should have the authority to order a new trial." (45 Ill. App. 3d 432, 437, 359 N.E.2d 1078, 1081.)

Such statements by the appellate court of this district have raised questions concerning the appropriate standard to employ in reviewing a jury verdict pursuant to motions for a new trial.

We now hold, and, hopefully, this will resolve the issue, that whether it is the trial court or this court that conducts the review, the correct standard of review where the trial court has granted or denied a motion for a new trial is, notwithstanding *Spankroy*, whether the jury verdict is against the "manifest weight of the evidence." We believe this is the better standard because of the high regard in which the jury is held in our American system of jurisprudence and our generally accepted principle that a judge should not substitute his judgment for that of the jury. Furthermore, this standard is consistent with that endorsed by our supreme court (*Mizowek v. DeFranco* (1976), 64 Ill. 2d 303, 356 N.E.2d 32), all other districts (*Sheahan v. Dexter* (3rd Dist. 1985), 136 Ill. App. 3d 241, 483 N.E.2d 402; *Klimek v. Hitch* (4th Dist. 1984), 124 Ill. App. 3d 997, 464 N.E.2d 1272; *Reuter v. Kocan* (2nd Dist. 1983), 113 Ill. App. 3d 903, 446 N.E.2d 882; *Bean v. Volkswagenwerk Aktiengesellschaft* (5th Dist. 1982), 109 Ill. App. 3d 333, 440 N.E.2d 426), and also with other First District cases (*Steinberg v. Petta* (1985), 139 Ill. App. 3d 503, 487 N.E.2d 1064;

*Martinet v. International Harvester Co.* (1977), 53 Ill. App. 3d 213, 368 N.E.2d 496).

■ Thus, where there is evidence in favor of the defendant which, if believed, supports the verdict in favor of defendant, the reviewing court should not set aside a jury determination. (*Clifton v. Nardi* (1978), 65 Ill. App. 3d 344, 382 N.E.2d 514.) In determining whether the verdict is contrary to the manifest weight of the evidence, the test is not whether the evidence *could have* supported a verdict for the movant if contrary inferences were drawn but whether a contrary verdict is clearly evident. (*Johnson v. Chicago Transit Authority* (1975), 28 Ill. App. 3d 945, 329 N.E.2d 395.) Therefore, in plaintiff's motion for a new trial, the issue was whether the jury verdict was contrary to the manifest weight of the evidence in finding that the defendant was not negligent or that such negligence did not proximately cause decedent's death and, if not, the jury verdict for the defendant may not be set aside.

■ In his ruling on the post-trial motion, the trial judge, while noting the inconsistencies with respect to what the witnesses observed, nevertheless stated that he believed the cumulative effect of their testimony concerning the conduct of the plaintiff was sufficient to offset that of the plaintiff's witnesses. He stated that, in his opinion, it was apparent that the jury gave the most credibility to the testimony of Mr. Foley. Mr. Foley's testimony was clear and uncontroverted as to Mrs. Rocks' failure to stop at the crossing, even though the gates had lowered, that the warning bells had begun ringing before she approached the track area, and that her moving auto struck the lowered crossing gate and bumped it upward and over the top of her auto, enabling her auto to enter the crossing. Also, as the defendant correctly observed at the hearing on plaintiff's motion for a new trial, the jury's answers to the two special interrogatories were directly inconsistent with plaintiff's theories of recovery and were supportive of the general verdict. Furthermore, it should be noted that these special interrogatories, which supported the defendant's position, could only have been set aside by the trial judge, regardless of the standard applied by the court to the general verdict, if the interrogatories were against the manifest weight of the evidence. Under Illinois law the answer to a special interrogatory may not be set aside unless the trial court finds that it is "contrary to the manifest weight of the evidence, which requires that an opposite conclusion be clearly evident." (*Buford v. Chicago Housing Authority* (1985), 131 Ill. App. 3d 235, 249, 476 N.E.2d 427, 438; *Duffek v. Vanderhei* (1980), 81 Ill. App. 3d 1078, 401 N.E.2d 1145.) Hence, in denying plaintiff's post-

trial motion in its entirety, we find that no matter which of the review standards as set forth above were applied, the trial judge could not have found against the jury's verdict under these circumstances. Accordingly, we, therefore, find no basis here for reversing that determination. However, we further find from our review of the record that the trial court in fact applied the proper "manifest weight of the evidence" standard.

■■ Plaintiff's second ground for a new trial is based on the trial court's refusal to give the jury two of plaintiff's tendered instructions. The trial court gave the defendant's instruction IPI Civil 2d No. 60.01 concerning decedent's violation of the motor vehicle statute which imposes a duty on all drivers to exercise due care when approaching a railroad crossing. (See Ill. Rev. Stat. 1983, ch. 95½, par. 11—1201.) And, over defendant's objections, the trial court allowed plaintiff's non-IPI instruction No. 30, which provided: "Where the railroad crossing gate is initially down, a driver could reasonably infer that the gate is in good working order and the raised gate is an invitation to proceed over the tracks." (*Gillan v. Chicago North Shore & Milwaukee Ry. Co.* (1954), 1 Ill. App. 2d 466, 480, 117 N.E.2d 833, 839.) However, plaintiff now argues that it was error to give the prior instruction, *i.e.,* IPI Civil 2d No. 60.01 and non-IPI No. 30, without giving the plaintiff's refused instruction, a non-IPI instruction based on *Chicago & Alton R.R. Co. v. Pearson* (1900), 184 Ill. 386, 391, 56 N.E.2d 633, 635, which stated: "If a person is mislead [*sic*] without his fault or with the surroundings, this [*sic*] and of itself may excuse that person's failure to look or listen."

In *Chicago & Alton R.R. Co.,* the jury was permitted to determine, under the peculiar facts of that case, if the decedent's duty to look and listen for the train had been excused. There, the plaintiff's decedent was struck by a southbound train while a northbound freight train was passing which, it was claimed, may have distracted decedent or drowned out the sound of the approaching southbound train. In the present case, however, there was no evidentiary basis to excuse decedent's duty to look and listen, since, unlike *Chicago & Alton R.R. Co.,* there was no evidence other than in the equivocal and controverted testimony of Mr. Filip that there might have been a second train in the Westmont station at the time of the accident, which could have blocked decedent's view. Furthermore, the work crew of the train that struck the decedent confirmed the testimony of the other witnesses that there was not a second train in the Westmont station at that time and, in fact, the next commuter train which was scheduled to stop at the Westmont station was one mile west of the station

at the time of the accident. Additionally, under the circumstances, the proffered instruction could have confused and misled the jury concerning the law and decedent's duty because the facts here clearly did not provide any basis to excuse the decedent from the statutorily imposed duty to stop at the railroad crossing, as set forth in the motor vehicle statute and under IPI Civil 2d No. 60.01. Accordingly, we find that the trial court acted properly within its discretionary authority when it refused the tendered non-IPI instruction. See *Gordon v. Chicago Transit Authority* (1984), 128 Ill. App. 3d 493, 470 N.E.2d 1163; *Malek v. Lederle Laboratories* (1984), 125 Ill. App. 3d 870, 466 N.E.2d 1038; see also 87 Ill. 2d R. 239(a).

■ Plaintiff's second refused instruction involved IPI Civil 2d No. 60.01 concerning the defendant's statutory duty of a railroad to sound a warning before reaching certain crossings. Originally, the legislature in 1874 enacted a statute which provided that all railroads in Illinois were required to sound a bell, whistle, or horn continuously from a distance of at least 80 rods, through a highway gate crossing. (Ill. Rev. Stat. 1874, ch. 114, par. 43.) Then in 1957, the ICC issued General Order 176, which excused railroads from the duty to sound a warning under certain circumstances and provided, in pertinent part that:

> "each and every railroad in the State of Illinois is hereby excused from sounding a locomotive bell, whistle or horn as required by section 6 *** approved March 31, 1874, as amended, at such railroad highway grade crossings which are protected by flashing light signals or *** are automatically controlled and operated by means of track circuits and installed in accordance with the provisions of General Order 138." (ICC General Order 176 (approved 1957 Ill. Laws 1601).)

The Westmont crossing that was involved in the accident here was equipped in 1951 with track circuits, flashing lights, ringing bells, and automatic gates, which was consistent with ICC General Order No. 138, and the railroad was, therefore, excused from the duty of sounding a warning before reaching the Westmont crossing.

Plaintiff contends, however, that the burden was on the defendant to establish that the Westmont crossing met all ICC specifications in order to qualify for the exemption from the duty to sound a warning. Plaintiff argues that defendant would only be excused from this duty if the Westmont crossing gates complied with the 1973 amendments to General Order 138, in which the ICC enacted stricter safety specifications. Accordingly, plaintiff asserts that since the defendant did not meet the stricter 1973 standards, it was not excused from its duty to

sound a warning at the Westmont crossing. It is, thus, plaintiff's theory that a malfunction in the crossing gates had proximately caused the accident in which Mrs. Rocks was fatally injured and, because the railroad was not excused from the duty to sound a warning and it is undisputed that none was sounded, the defendant was negligent. However, a fair reading of the language found in the 1973 ICC amendment clearly demonstrates a legislative intent to exempt all previously existing crossings and to apply the new standards prospectively only. Moreover, the burden was on plaintiff to produce evidence that the crossing gates were improperly maintained; however, there is no evidence in the record to support such a claim. The plaintiff also contends that the defendant was not excused from the duty to sound a warning at the Westmont crossing. But, as stated above, there was no evidence of negligent maintenance, and additionally, the jury, in answering a special interrogatory, specifically found that the defendant did not fail to properly maintain, operate and renew its signals as required under the ICC rules.

■ Thus, plaintiff's tendered instruction, IPI Civil 2d No. 60.01, which is based on the 1874 bell and whistle order, is applicable only to crossings that do not have signals that comply with the ICC General Order 138, and there was no evidence that the Westmont crossing did not meet ICC signal specifications. Therefore, we believe that under the plain meaning of the ICC provisions the defendant was exempted from sounding a warning when approaching the Westmont station, which had automated signals installed prior to 1973. Accordingly, the trial court was correct in refusing to instruct the jury otherwise under IPI Civil 2d No. 60.01.

■■ Finally, plaintiff objects to the admission of defendant's photograph of the train involved in the accident and the denial of plaintiff's photographs showing a train in the Westmont station. Defendant's exhibit No. 15, an 8-by-10 color photograph of a train standing on open track, was admitted into evidence. The photograph was not a "blowup" and was introduced merely as an accurate portrayal of the train involved in the accident. Plaintiff's tendered photographs, on the other hand, allegedly were taken 3½ years after the accident, in the summertime when a tree near the crossing was larger, since it was in full bloom, and at a time when minor construction activities were taking place at the Westmont station. Plaintiff allegedly sought to introduce these photographs as a portrayal of the view a person in Mrs. Rocks' position would have had of an approaching train. Plaintiff offered the photographs to support his theory that visual obstructions were a proximate cause of decedent's death.

The trial judge noted that there was a substantial difference between plaintiff's tendered photographs and photographs taken a few days after the accident and, therefore, concluded that the tendered photographs were inadmissible as they were "prejudicial" and inaccurate representations of the view of the scene at the time of the accident. Plaintiff responds that photographs with changed conditions do not always mislead the jury and require exclusion, and cited cases in support of this proposition. However, we find these cases distinguishable here because in our case the changed condition goes to a material fact and not to a collateral fact, as it did in the cited cases and, thus, could not be cured with a limiting instruction. See, *e.g., Warner v. City of Chicago* (1978), 72 Ill. 2d 100, 378 N.E.2d 502 (portrayal of sidewalk without snow is not prejudicial because the photograph was used to show the nature of the defect in the pavement at the time of the fall, not its surface conditions); but *cf. Brennan v. Leshyn* (1964), 51 Ill. App. 2d 132, 201 N.E.2d 167 (trial court acted within its discretion in excluding posed photograph of boiling pit when it was not established that the railing in photograph was in existence at the time of the accident).

The plaintiff's photographs in this instance are more similar to those denied admission in *J. L. Simmons Co. v. Firestone Tire & Rubber Co.* (1984), 126 Ill. App. 3d 859, 467 N.E.2d 327. In *J. L. Simmons,* the trial judge found that any probative value of the photographs was greatly outweighed by the prejudice to the defendant. The tendered photographs in *J. L. Simmons* showed conditions that were considerably different than at the time of the accident, were favorable to the plaintiff's theory, and were likely to mislead the jury even after an explanation of the changed conditions. Similarly, the plaintiff here did not demonstrate to the trial judge that each of the tendered photographs "ha[d] some probative value and that it [was] an accurate portrayal of what it purports to show" and, accordingly, the necessary foundation was not established for their admission at trial. (*Levenson v. Lake-To-Lake Dairy Cooperative* (1979), 76 Ill. App. 3d 526, 537, 394 N.E.2d 1359, 1367.) Additionally, the trial judge, of course, is generally in a better position to evaluate the probative value of any photographs tendered by a party, and this was especially true here where there was already, as found by the trial judge, "ample documentary evidence in the record, plus the testimony of various witnesses, to give the jury a proper perspective" of the accident scene. (*Porro v. P. T. Ferro Construction Co.* (1979), 72 Ill. App. 3d 377, 382, 390 N.E.2d 958, 961.) It was within the trial judge's discretion to determine whether to admit the plaintiff's tendered photographs with

the changed conditions and whether to admit defendant's photograph of the instrumentality involved in the accident. Based on our review of the record presented (we note also that plaintiff did not submit his photographs as part of the record on appeal), we cannot say that the trial court abused its discretion, and hence, we find no reason to disturb the trial court's determination.

For all of the reasons set forth above, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

BUCKLEY and MANNING, JJ., concur.