The Department of Public Works and Buildings of the State of Illinois, for and in Behalf of the People of the State of Illinois, Petitioner-Appellant, v. Don M. Atkins, et al. (John Busiere and Jessie J. Busiere, Tract No. 244–245), Defendants-Appellees.

Gen. No. 65–81.

Fifth District.
March 21, 1966.

William G. Clark, Attorney General, of Springfield (William W. Hart, Jr. and Richard O. Hart, Special Assistant Attorneys General, both of Benton, and Richard E. Quinn, Special Assistant Attorney General, of counsel), for appellant.

Elmer Jenkins, of Benton, for appellees.

GOLDENHERSH, P. J.

Petitioner, The Department of Public Works and Buildings, appeals from the judgment of the Circuit Court of Franklin County entered upon a jury verdict in the amount of $38,000, in an action to condemn a parcel of land owned by defendants John and Jessie J. Busiere. Title was vested in petitioner in accordance with the provisions of Chapter 47, section 2.1 et seq., Ill Rev Stats 1965, and at the time of trial the construction of the

highway for which the parcel involved was taken, had been completed.

The parcel of land condemned fronted 146 feet on the northerly side of West Main Street, the main thoroughfare in West City, in Franklin County. The westerly 82 feet of the property had a depth of 149 feet, and the easterly 64 feet had a depth of 298 feet. The easterly portion of the land was improved with a building, irregular in shape, with a maximum width of 65.8 feet and a maximum length of 116.6 feet. The building was erected, in stages, from 1941 to 1950. John Busiere, one of the owners, operated a garage, repair and paint shop, in the premises, and it is clear from the testimony that the property was being utilized for its highest and best use. A number of photographs, offered and admitted in evidence, portray the grounds and the interior and exterior of the building.

Five witnesses testified for petitioner; both defendants and 25 additional witnesses testified for defendants. The valuation testimony for petitioner ranged from a low figure of $13,000 to a high of $17,300; the testimony on behalf of defendants ranged from a low of $48,000 to a high of $75,000.

As grounds for reversal of the judgment, petitioner contends that several of the witnesses called by defendants used erroneous methods of evaluating defendants' property, and the court erred in denying petitioner's motions to strike their testimony.

The testimony of defendants' witness, Ritchason, shows that his opinion that the fair cash market value of defendants' property was $60,000, was based on a replacement value of $45,000 for the improvements and a value of $15,000 for the land. Defendants contend that the opinion of this witness as to value is not based solely on the sum of the separate valuation of the land added to the replacement cost of the building, that the

101

witness considered these figures, among other things, in arriving at his opinion, but a search of the record fails to reveal anything else which was considered by this witness in arriving at the fair cash market value.

The record shows that the opinion of defendants' witness Taylor was based on the cost of reproducing the building, and again, a search of the record fails to reveal what else, if anything, was considered. It is clear, from his testimony, that in arriving at his opinion he used the reproduction cost without giving any consideration to depreciation of the improvements.

Although the witness Payne answered affirmatively that he had knowledge of real estate values in the vicinity of defendants' property, the record fails to reveal the basis of that knowledge. His testimony, during cross-examination shows clearly that the sole basis of his opinion was his comparison with what it had cost him to build a building six years earlier. The record fails to reveal the nature and type of construction of the building to which he referred.

Defendants' witness, Greenberg, based his opinion on the replacement cost of the improvements necessary "to get the man going again." Although he testified to an acquaintance with the type of property involved, not only in West City, but in a large area in Southern Illinois, it is clear from the record that replacement cost of the building was the sole factor considered in reaching the opinion of value to which he testified.

The witness, Angus Knight, called by defendants, in answer to the question as to what factors he considered in arriving at the valuation of defendants' property, stated "Well, the only thing I could do was to use my own building."

Ernie Weeks, testifying as to value, based his opinion on a comparison of defendants' building with his own building in West Frankfort.

102

The opinion of Holland Simmons was based on what he paid for his property in Benton, in which property, he operates a retail drug store. There is no evidence to show in what manner a drug store in Benton is comparable to a garage building in West City.

██ The requirements for qualifying a witness to testify as to value of real estate are not stringent, and anyone who is acquainted with the property in question and has knowledge of values, either in the sale or ownership of property nearby, is competent to testify. Forest Preserve Dist. of Cook County v. Kercher, 394 Ill 11, 66 NE2d 873. The qualification is "knowledge of values," which may, among other factors, be based on acquaintance with the property, or sale or ownership of property nearby. Without knowledge of its value, acquaintance with the property, or sale or ownership of nearby property, does not qualify the witness to testify as to fair cash market value.

██ In an eminent domain proceeding, the owner of property taken is to be compensated for its fair cash market value for its highest and best use, City of Chicago v. Equitable Life Assur. Society, 8 Ill2d 341, 134 NE2d 296. Fair cash market value is the price at which the property taken would be sold if it were sold by a willing seller to a willing buyer. Housing Authority of the City of East St. Louis v. Kosydor, 17 Ill2d 602, 162 NE2d 357. Compensation for land taken is based on the value of the land, as land, with all its capabilities. Department of Public Works & Buildings v. Hubbard, 363 Ill 99, 1 NE2d 383. As stated by the Supreme Court in Department of Public Works & Buildings v. Lotta, 27 Ill2d 455, at page 456, 189 NE2d 238, "We have consistently held that the fair market value of improved property is not the sum of the value of the building and the value of the land computed separately. For this purpose, the whole does not necessarily

103

equal the sum of the parts. The value of unimproved land, adaptable for any use, may diminish, as land, when improved by the construction of a building and so committed to a particular use. For similar reasons, the construction of a building may not produce an increment in value equal to its cost, since the improvement may not be desirably situated. To avoid misleading and confusing the jury, the evidence may properly be confined to the value directly at issue, that is, the value of the improved land as a whole."

In Department of Public Works & Buildings v. Divit, 25 Ill2d 93, 182 NE2d 749, in holding that the trial court had erred in refusing to strike the testimony of a witness, the court at page 100, said: "The measure of damages for property taken is the amount for which the entire property would voluntarily sell, and although replacement or reproduction cost is one element which may be considered, it is not alone conclusive. (Department of Public Works & Buildings v. Pellini, 7 Ill2d 367, 131 NE2d 55; Forest Preserve Dist. of Chicago v. Chilvers, 344 Ill 573, 176 NE 720.) The test is not what the improvements originally cost or would cost if replaced, but rather the value of the land and buildings considered as a whole. (City of Chicago v. Giedraitis, 14 Ill2d 45, 150 NE2d 577.) Since Ray based his opinion solely upon reproduction costs without regard to what a buyer and seller would agree upon, his testimony concerning the value of the land taken was improper. And since we cannot know the extent to which the jury was influenced by the improper standards employed by the latter witness, it necessarily follows that there must be a new trial to determine the value of the land taken."

The testimony of the witnesses enumerated should have been stricken and the judgment must be reversed.

Although the conclusion reached makes it unnecessary that this court consider the other grounds for reversal

urged by petitioner, one of the issues raised in petitioner's brief should be discussed.

Petitioner argues that the court erred in denying its motions to limit the number of witnesses for each side on the issue of valuation. Upon retrial, we refer the trial court to the case of Geohegan v. Union El. R. Co., 266 Ill 482, 107 NE 786, in which opinion, at page 488, the court quoted with approval, the following statement from the opinion of the Supreme Court of Michigan in Fraser v. Jennison, 42 Mich 206, 3 NW 882: "There must be some limit to the reception of expert evidence, and that which was fixed in this case was quite liberal enough. To obtain such evidence is expensive, since desirable witnesses are not to be found in every community, but an army may be had if the court will consent to their examination; and if legal controversies are to be determined by the preponderance of voices, wealth, in all litigation in which expert evidence is important, may prevail almost of course. But one familiar with such litigation can but know that for the purposes of justice the examination of two conscientious and intelligent experts on a side is commonly better than to call more, and certainly when five on each side have been examined the limit of reasonable liberality has in most cases been reached. The jury cannot be aided by going farther."

The judgment of the Circuit Court of Franklin County is reversed and the cause remanded for a new trial.

Reversed and remanded for new trial.

MORAN and EBERSPACHER, JJ., concur.