BRENT KLIMEK *et al.*, Plaintiffs-Appellees and Cross-Appellants, *v.* ALFRED STEPHEN HITCH, Defendant-Appellant and Cross-Appellee.

Fourth District  No. 4—83—0752

Opinion filed June 14, 1984.

Costigan & Wollrab, of Bloomington, for appellant.

Kinate & Morgan, of Fairbury, for appellees.

JUSTICE GREEN delivered the opinion of the court:

On October 30, 1980, plaintiffs, Brent and Claudia Klimek, brought an action for trespass in the circuit court of Livingston County against defendant, Alfred Stephen Hitch. After a trial by jury, a judgment was entered on November 18, 1982, in favor of plaintiffs and against defendant in the sum of $8,500 for compensatory damages and $14,500 for punitive damages. The trial court then allowed defendant's post-trial motion request for a new trial as to all questions of damages. Pursuant to plaintiffs' motion for a *remittitur*, the court ruled that plaintiffs could negate the order for a new trial by consenting to a *remittitur* (1) of the compensatory damage award by $2,500 to the sum of $6,000, and (2) of the punitive damage award by $12,000 to the sum of $2,500. Plaintiffs refused the *remittitur* and a new jury trial was held. On September 13, 1983, the court entered a judgment on a verdict awarding plaintiffs $10 compensatory damages and $25,000 punitive damages. The trial court denied defendant's request for another new trial.

After plaintiffs rejected the *remittitur* upon the award of the new trial, they sought leave to appeal to this court pursuant to Supreme Court Rule 306 (87 Ill. 2d R. 306). We denied leave to appeal. Defend-

ant now appeals the portion of the judgment entered after the second trial which awarded plaintiffs $25,000 in punitive damages. Plaintiffs cross-appeal, contending that the trial court erred in its granting of a new trial after the first trial.

The evidence was much the same at the two trials. When the difference is significant, we will discuss the evidence at the trial in which the verdict in issue was rendered. Plaintiffs were shown to own an 18-acre tract near Chatsworth upon which a dwelling house, a barn, and a garage were located. They had purchased the parcel in 1973 pursuant to an installment contract for a total price of $21,000. Two hedgerows grew along the north and east boundaries of the property consisting of Osage orange hedge, horse weeds, wild plum, black cherry, mulberry, elm, multiflora rose, wild gooseberry and wild asparagus. The hedgerow was approximately one-quarter mile long and varied from 20 to 25 feet in width. The dispute giving rise to this litigation arose when defendant, an adjoining landowner, acting without plaintiffs' consent, went on plaintiffs' land in the vicinity of the hedgerow in July of 1976 and, with the aid of a bulldozer operator and the use of a chain saw, removed the hedgerow.

■ We first rule upon the cross-appeal. Crucial to that decision is our determination as to whether the $8,500 award of compensatory damages should have been set aside. If the award of the new trial on that issue was correct, we need not consider the question of whether the punitive damage award should have been set aside, because plaintiffs received a larger award at the second trial, and the amount of that award which we are permitting to stand is equal to the award at the first trial.

Several witnesses testified as to whether plaintiffs sustained damages as a result of defendant's trespass and, if so, the amount of the damage. Plaintiff, Brent Klimek, and James Kiley, an appraiser, testified for plaintiffs, stating their opinions of the value of the premises before and after the trespass, thus formulating a basis for determining the diminution in value of the property resulting from the removal of the hedgerow. Two appraisers testified for the defendant. Each stated that, in his opinion, the removal did not decrease the value of the property. Of all the witnesses who testified, none but plaintiff Brent Klimek gave an opinion of compensatory damages as large as the $8,500 awarded by the jury. He testified that, in his opinion, the property was worth $75,000 before the trespass and $60,000 thereafter. The question of the sufficiency of the evidence to support the $48,500 award centers on the significance of that plaintiff's testimony.

James Kiley was shown to have considerable appraisal experience.

He testified that the tract was worth $66,000 before the removal of the hedgerow and $60,000 afterwards. Mr. Kiley also testified that the property had subdivision potential. When asked whether, if the property "were subdivided," a greater reduction in value would have taken place as a result of the removal of the hedgerow, Mr. Kiley indicated that, in his opinion, there would be a $9,000 reduction in value. However, he did not say that the potential for subdivision existing at the time of trespass was such that the reduction would have been in the amount of $9,000. Rather, his opinion was couched in terms of what would have been the situation if the property were subdivided.

Arthur Korte, a real estate salesman with 30 years' experience, and Jack Kennedy, an agricultural loan officer and farm manager for a bank, were the appraisal witnesses who testified for defendant and stated opinions that the value of the property was not diminished by the cutting of the hedgerow. Richard Miller, a farmer with a college degree in agricultural economics and rural sociology testified for plaintiffs in rebuttal. He explained how the existence of the hedgerow served as a natural habitat for wild life. Other testimony indicated that the hedgerow served as a windbreak. Nevertheless, the hedgerow was shown to be a disadvantage when the property was used for agricultural purposes, because it reduced the area that could be tilled and also interfered with the operation of farm machinery which came close to it.

Plaintiffs maintain that the testimony of Brent Klimek justified the $8,500 award of compensatory damages, because the award was within his estimate of $15,000 reduction in value resulting from the removal. They maintain that his testimony was admissible, and that when the question of diminution of the value of land is in issue, a court should not upset a damage award that is within the range of the opinion testimony of witnesses except under very rare circumstances. The trial court admitted Mr. Klimek's testimony, and the question of its admissibility is not before us. However, we examine the theory upon which it was admitted in order to determine the deference we must give the testimony.

In *Department of Transportation v. Harper* (1978), 64 Ill. App. 3d 732, 381 N.E.2d 843, a condemnation case, the owners of the land to be condemned were permitted by the trial court, over objection, to testify to their opinions as to the value of the property being condemned and damages to the remainder of their land not taken. The least qualified of the two owners did not testify whether he was familiar with the value of land in the area, nor did he show that he had any other expertise. In testifying to his estimate of values, he was di-

rected by the examining counsel to consider the size of his land, the improvements thereon, and his general familiarity with the property. The other landowner was shown to have knowledge of real estate values in the area. The opinions of the landowners were the only testimony on their behalf giving opinions as to values. The jury returned verdicts nearer in amount to the appraisals of the petitioners' witness than that of the owners. On appeal by the petitioners, the appellate court affirmed.

The *Harper* court recognized Illinois cases had held that any witness with knowledge of property to be condemned and real estate values in the area was competent to give an opinion as to value in a condemnation case. (*Trustees of Schools v. Kirane* (1955), 5 Ill. 2d 64, 124 N.E.2d 886; *Department of Public Works & Buildings v. Atkins* (1966), 68 Ill. App. 2d 98, 215 N.E.2d 452.) However, the court also recognized that no Illinois court of review had passed upon the question of whether a landowner was permitted to give such an opinion as to the values connected with his own land with any less foundation than that required of other witnesses. The court recognized that some States permit an owner to give his opinion without foundation while other States require the minimum foundation set forth for all witnesses in *Kirane*. The court concluded that a proper rule would be that an owner could testify as to the values of his own property, unless he was affirmatively shown not to have realistic knowledge of the attributes of the property that would give it value. The court held that (1) the burden was on the condemning authority to show that the owner lacked the required knowledge; and (2) in any event, knowledge of land values in the area was not necessary to make the landowner competent.

In affirming the trial court's decision, the *Harper* court also applied the rule that, in condemnation cases, when the jury views the premises, and when the amount of compensation fixed by the jury is within the range of the evidence, that determination will not be upset "unless it is clearly in error or the result of passion or prejudice." (*Department of Transportation v. Harper* (1978), 64 Ill. App. 3d 732, 736, 381 N.E.2d 843, 847.) This rule has been pronounced in numerous cases. See *Trustees of Schools v. Schroeder* (1961), 23 Ill. 2d 74, 177 N.E.2d 178; *Lake County Forest Preserve District v. Continental Illinois National Bank & Trust Co.* (1976), 35 Ill. App. 3d 942, 343 N.E.2d 6.

The *Harper* court not only admitted the one landowner's testimony which had little foundation but also permitted that landowner's opinions of value and damage to form the upper limit of the area in

which awards must be approved unless "clearly in error or the result of passion or prejudice." We need not decide whether we would follow *Harper* in every detail, because this case was brought for trespass and not in condemnation. Furthermore, unlike the condemnation cases where the verdict is approved if it is within the range of the opinion testimony, the jury here did not view the premises. We conclude that the rule by which the testimony in determining the amount of damages should be viewed is the usual rule set forth by the supreme court that the jury verdict should be overturned and a new trial granted only if the verdict is contrary to the manifest weight of the evidence. (*Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 356 N.E.2d 32.) We consider the plaintiffs' proof of compensatory damages in this light.

■ Mr. Klimek testified describing the property and the aesthetic nature of the hedgerow in detail. He also testified that the plaintiffs had purchased the property in 1973 for $21,000 and had made improvements to the house which was then vacant and run-down. He did not testify to any knowledge of property values in the area. We agree with the trial court that his testimony concerning property values was worth very little. There was no substantial testimony that fixed the diminution in the value of the premises as greater than the $6,000 testified to by James Kiley. We agree with the trial court that the award of $8,500 was contrary to the manifest weight of the evidence. The trial court did not err in granting a new trial.

■ We now turn to the award of $25,000 in punitive damages made at retrial. Defendant testified that he thought Mrs. Joyce Howell Lindelof had obtained the property in a divorce settlement with her former husband and had authority to authorize him to remove the hedgerow. However, although Mrs. Lindelof and her former husband formerly had interests in the property, and Mrs. Lindelof had executed a deed to Brent Klimek in 1980, the evidence was undisputed that defendant knew plaintiffs had been in possession of the property for several years and had, in fact, rented portions of the acreage to defendant. Plaintiff, Claudia Klimek, testified that when she saw defendant tearing down the hedgerow, she asked him to stop, but he refused to do so. The jury could properly have determined that defendant eliminated the hedgerow knowing full well that he had no right to do so.

Much evidence was introduced as to the importance the plaintiffs placed on the hedgerow, and how it increased the enjoyment they obtained from living there. While the hedgerow was not shown to have increased the market value of the premises to the amount of the dam-

age award, the plaintiffs' enjoyment of the hedgerow was a proper matter for consideration in the award of punitive damages. Although defendant could have thought that removing the hedgerow would benefit the agricultural potential of both his and plaintiffs' land, he should have been more sensitive to their desires to retain the hedge for other reasons. In any event, plaintiffs had a right to have the hedge remain as they wanted it.

In *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353, the supreme court discussed punitive damages in detail. The court noted that the function of such damages is similar to that of a criminal penalty, *i.e.*, as a punishment to the wrongdoer and a deterrent to others who might attempt to engage in similar conduct. Because of the penal nature of punitive damages, the court indicated that such damages were not favored, and courts must take caution to see that they are not improperly or unwisely awarded. However, the court's definition of the conduct giving rise to such damages would include the wilful and wanton disregard of plaintiffs' rights which the jury apparently found defendant to have committed here.

In *Hazelwood v. Illinois Central Gulf R.R.* (1983), 114 Ill. App. 3d 703, 450 N.E.2d 1199, this court considered that in determining whether an award was excessive, the reviewing court should consider, in addition to the nature and enormity of the wrong, also (1) the financial status of the defendant, and (2) the potential liability of the defendant. Here, as with most farmers, defendant's financial status was not easy to ascertain. He testified that he was buying, from two aunts, an 80-acre farm which he operated, and upon which he had built a house in which he lived. He testified to having little equipment, and that he had lost most of it immediately prior to trial. He said that he had made no payment to his aunts on the purchase contract for the farm and that he had little, if any, money in bank accounts. He was farming another 160 acres in addition to the 80-acre tract he owned and had about $15,000 worth of equipment with about a similar amount of liabilities. Defendant has no other potential liability arising from the occurrence.

Mr. Justice Mills, in writing the opinion in *Hazelwood*, stated that a punitive damage award "should send a message loud enough to be heard but not so loud as to deafen the listener. A deafening award is excessive." (114 Ill. App. 3d 703, 713, 450 N.E.2d 1199, 1207.) Considering the nature of the wrong here and defendant's financial situation in the face of an uncertain farm economy, we conclude that a substantial punitive damage award was supported by the evidence, but that the sum of $25,000 is excessive. As the case has been tried twice

before, rather than ordering another new trial, we reduce the award to the sum of $14,500 which we deem to be the highest amount that could be justified. In reducing the award ourselves, rather than order a new trial, we are following the precedent of this court in *Hazelwood* and that of the Fifth District in *Stambaugh v. International Harvester Co.* (1982), 106 Ill. App. 3d 1, 435 N.E.2d 729, *rev'd on other grounds* (1984), 102 Ill. 2d 250.

As we have indicated, we affirm the order of the trial court entered after the first trial, awarding a new trial, and affirm the awarding of punitive damages at the second trial but reduce the amount of the judgment for those damages to the sum of $14,500.

Affirmed in part; modified as directed.

MILLS, P.J., and MILLER, J., concur.