Matthew W. STROUD, and Margaret A. Stroud, Appellants (Defendants Below),

v.

Trevor A. LINTS, Daniel M. Lints, and Vicki Lints, Individually and as Parents/Natural Guardians of Trevor A. Lints, Appellees (Plaintiffs Below).

No. 20S04–0306–CV–275.

Supreme Court of Indiana.

June 25, 2003.

Robert T. Sanders III, Elkhart, IN, Attorney for Appellants.

John D. Ulmer, Bodie J. Stegelmann, Goshen, IN, Attorneys for Appellees.

## ON PETITION TO TRANSFER

BOEHM, Justice.

Following a bench trial, the trial court in this personal injury case awarded approximately $1.4 million in compensatory and $500,000 in punitive damages against the defendant. The defendant appealed the $500,000 punitive damages award, claiming the amount was excessive, and the Court of Appeals affirmed, finding that the award was not an abuse of the trial court's discretion. We grant transfer in this case and hold that the amount of punitive damages awarded by a trial court is subject to appellate review de novo. Applying that standard, and given the circumstances in this case, the trial court's $500,000 punitive damages award is clearly excessive. We vacate the judgment, and remand this case to the trial court for entry of a new award.

### Factual and Procedural Background

Seventeen-year-old Matthew Stroud was driving a vehicle at excessive speed while intoxicated, ran a stop sign, and collided with another vehicle. Stroud's passenger, Trevor Lints, was severely and permanently injured, and the occupants of the other vehicle were killed. Stroud pleaded

guilty to criminal charges and in 1997 was sentenced to eight years imprisonment. Lints and his parents sued Stroud and, after a bench trial, Lints was awarded $1,381,500 in compensatory damages [1] and $500,000 in punitive damages. Stroud appealed the punitive damages award, contending it was excessive because, given his financial situation and prospects, there was no possibility he could ever pay it. The Court of Appeals, applying an abuse of discretion standard, affirmed the trial court. *Stroud v. Lints,* 760 N.E.2d 1176, 1185 (Ind.Ct.App.2002). Stroud petitioned this Court for transfer, contending: (1) the Court of Appeals should have reviewed the trial court's punitive damages award under a de novo standard; and (2) the punitive damages award was excessive.

## I. Standard of Review of Punitive Damages

It is clear that a state is required, as a matter of federal constitutional law, to provide appellate review of the amount of a punitive damages award. *Honda Motor Co. v. Oberg,* 512 U.S. 415, 421, 114 S.Ct. 2331, 129 L.Ed.2d 336 (1994); *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 15, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). Stroud contends that, in light of the United States Supreme Court's decision in *Cooper Indus., Inc. v. Leatherman Tool Group, Inc.,* 532 U.S. 424, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001), review of the trial court's punitive damages award must be conducted de novo. *Cooper Industries* held that when a defendant contends a punitive damages award by a jury is excessive under the Due Process Clause of the Fourteenth Amendment, appellate courts are to review de novo a trial court's decision not to order a remittitur or new trial. *Id.* at 436, 121 S.Ct. 1678. However, as the Court of Appeals correctly noted, the Court in *Cooper Industries* also noted that when "no

constitutional claim is made, the role of the appellate court, at least in the federal system, is merely to review the trial court's 'determination under an abuse-of-discretion standard.'" *Id.* at 433, 121 S.Ct. 1678 (quoting *Browning–Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.* 492 U.S. 257, 279, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989)); *see also Fine v. Ryan Int'l Airlines,* 305 F.3d 746, 755 (7th Cir.2002) ("Since Ryan is not alleging a constitutional violation, we review this decision only for an abuse of discretion.").

After the Court of Appeals decision in this case, the United States Supreme Court handed down its decision in *State Farm Mut. Auto. Ins. Co. v. Campbell,* —— U.S. ——, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). *State Farm,* like *Cooper Industries,* addressed a claim that the amount of punitive damages awarded constituted deprivation of property without due process of law in violation of the Fourteenth Amendment. *State Farm* made clear that, in reviewing such a claim, all courts, state and federal, are required to consider: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Id.* at 1520. (citing *BMW of N. Am. v. Gore,* 517 U.S. 559, 575, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)). *State Farm* reaffirmed that an appellate court is required to review de novo a trial court's ruling on a due process challenge to a punitive award. *Id.*

Under these federal authorities, there is no federal constitutional requirement that a state law challenge to the

1. Lints' award of $1,842,000 was reduced twenty-five percent for comparative fault.

amount of an award be reviewed de novo. Stroud raises no federal constitutional claim. Rather, he contends only that the trial court incorrectly failed to consider his ability to pay a $500,000 punitive damages award. Thus, we must resolve the standard Indiana courts are to apply in reviewing a claim of an excessive punitive damages award under state law. We conclude as a matter of state law that review of the amount of a punitive damage award should be de novo.

The punitive damages award in this case was assessed by the trial court after a bench trial. Trial Rule 52(A) states, in relevant part, "On appeal of claims tried by the court without a jury or with an advisory jury, at law or in equity, the court on appeal shall not set aside the findings or judgment unless clearly erroneous." The decision to award punitive damages must be based on facts that are supported by clear and convincing evidence. Ind. Code § 34–51–3–2 (1998). In this case, the trial court did not enter any specific findings of fact, but merely found that punitive damages were appropriate.

■■■ The trial court's findings of historical fact—for example what the defendant did and what its motive was—and its conclusion that the evidence warrants imposition of punitive damages are reviewed on appeal just as other sufficiency issues. Both of these are subject to review on appeal under the standard established in *Bud Wolf Chevrolet, Inc. v. Robertson,* 519 N.E.2d 135, 137 (Ind.1988). They are to be affirmed if "considering only the probative evidence and the reasonable inferences supporting it, without weighing evidence or assessing witness credibility, a reasonable trier of fact could find such damages proven by clear and convincing evidence." *Id.* These conclusions of the jury or the trial judge in a bench trial are qualitatively different from the decision

that those findings warrant imposition of a specified amount of punitive damages. The former are the result of a traditional fact-finding exercise. But unlike compensatory damages, there is no entitlement to punitive damages, even if the facts support them.

Due process limitations on punitive damages awards are grounded in concerns for excessive punishments, unevenly administered justice, and arbitrary results. *State Farm,* 123 S.Ct. at 1520–21. As Justice Breyer put it in a phrase adopted by the full Court in *State Farm,* de novo review is required to assure that an award is an "application of law, rather than a decision-maker's caprice." *Id.* These same considerations apply in our state law regime, and require appellate review of the amount of punitive damages. The Indiana statutory limitation on an award to three times the amount of compensatory damages will usually alleviate the specific issue addressed in *State Farm* of punitive awards that are excessive in relation to compensatory damages. But concerns remain that the amount of punitive damages may be arbitrarily imposed, or inappropriate in relation to compensatory damages or criminal penalties for similar conduct, or grounded on the wrong factors, including the improper consideration given to the defendant's wealth. In short, for the same reasons the amount of a punitive award is reviewed de novo in a due process challenge, Indiana appellate courts are to review de novo state law challenges to the amount of the award.

Practical considerations also dictate de novo review of a punitive damage award. Under *State Farm,* appellate courts are to review de novo constitutional challenges to punitive damages. Plainly in the future all competently represented parties who challenge a punitive damage award will present constitutional claims as well as state

law issues. The factors identified by the Supreme Court in evaluating a federal constitutional challenge to a punitive award are for all practical purposes the same as those relevant to a state law review. For reasons of consistency and judicial economy, Indiana state courts should apply the same standard of review to state law issues.

De novo review of the amount of a punitive award is consistent with Indiana precedent as well as federal law under *State Farm*. *Bud Wolf* addressed the propriety of awarding punitive damages, not whether the amount was excessive. *Bud Wolf* went on to agree explicitly with the Court of Appeals in distinguishing the issue of whether the jury could have awarded punitive damages from whether the amount of damages awarded was excessive. *Bud Wolf*, 519 N.E.2d at 138 ("With respect to Bud Wolf's argument that punitive damages were excessive, we agree with the Court of Appeals' analysis and resulting conclusion. . . ."). The Court of Appeals' ruling on this point was: "Because we have concluded that the jury's award was supported by evidence, we must now consider whether the damages were excessive." *Bud Wolf*, 508 N.E.2d 567, 571 (Ind.Ct.App.1987). The Court of Appeals then analyzed whether the amount awarded was appropriate by looking at "the nature of the tort, the extent of actual damages, and the economic wealth of the defendant." *Id.* at 572. After undertaking that exercise, the Court of Appeals came to the conclusion that the amount awarded was not excessive, all without deference to the jury or the trial court ruling.

Similarly, in the order of this Court denying transfer in *Budget Car Sales v. Stott*, 662 N.E.2d 638 (Ind.1996), this court pointed out that the standard recited by the Court of Appeals had been superseded by *Bud Wolf*. The Court of Appeals had observed that "a defendant is cloaked with the presumption that tortious conduct was a noniniquitous human failing" and recited the standard of review as "whether the evidence excluded every reasonabl[e] hypothesis of innocent conduct." *Id.* Both of these statements plainly relate to review of the decision whether punitive damages should be awarded at all, not to the amount. *Erie Ins. Co. v. Hickman*, 605 N.E.2d 161 (Ind.1992), also addressed these issues, and never discussed the issue of an excessive award.

By contrast, in *Hibschman Pontiac, Inc. v. Batchelor*, 266 Ind. 310, 362 N.E.2d 845 (1977), which was cited in *Bud Wolf*, this Court also drew the distinction the dissent between review of the propriety of a punitive award and review of its amount. *Hibschman* stated that "Indiana has followed a rule that punitive damages in a proper case may be assessed by the jury within their sound discretion guided by proper instructions given by the court." *Id.* at 317, 362 N.E.2d at 849. However, while finding the decision to award punitive damages "within the province of the jury," this Court then determined that the award itself was too high, without further explanation and without any mention of deference to the jury or trial court, both of which had considered the award appropriate. *Id.* at 317–18, 362 N.E.2d at 849.

De novo review of punitive damages is also consistent with our state constitutional right to jury trial in civil cases. In *Cooper Industries*, the Supreme Court pointed out that "[u]nlike the measure of actual damages suffered, which presents a question of historical or predictive fact, the level of punitive damages is not really a 'fact' 'tried' by the jury." *Cooper Indus., Inc.*, 532 U.S. at 437, 121 S.Ct. 1678 (quoting *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 459, 116 S.Ct. 2211, 135

L.Ed.2d 659 (1996) (Scalia, J., dissenting)). For that reason, among others, the Court concluded that appellate review of a district court's determination that a jury's punitive damages award is consistent with federal due process does not implicate the Seventh Amendment right to a jury trial. In order to assure consistency with the requirements established in *BMW* for a punitive award, courts of appeal are required as a matter of federal constitutional law to review those determinations de novo. *Id.* at 436–37, 121 S.Ct. 1678. If, as the Supreme Court has held, a jury's decision as to the amount of punitive damages is not a finding of fact for purposes of its conformity to due process, then neither is it a fact when examined under state law, and appellate review de novo presents no issue under our state constitutional right to a jury trial.

▮▮▮ Applying an abuse of discretion standard, the Court of Appeals held that the $500,000 award in this case was permissible. For the reasons given above, we review that amount under a de novo standard. The decision of the trial court comes to an appeal cloaked with the presumption that it is correct. Otherwise stated, even under de novo review, a tie at the appellate level goes to the winner in the trial court, even if that party had the burden of proof or persuasion in the trial court. Under de novo review, no deference is owed to the result reached by the trial court, and if the record shows error in the judgment of the trial court, modification of the trial court's award is proper. Although this case, following *State Farm*, applies a de novo standard, for the reasons given below we would find the award excessive under any standard of review.

## II. Considering the Defendant's Wealth

▮▮▮ Given Stroud's financial circumstances, we conclude that the $500,000 award is far beyond the appropriate amount. We base that conclusion largely on what the law is trying to do in allowing punitive damages awards. First, and most importantly, it is not to compensate the victim or the victim's attorney. Neither the plaintiff nor the plaintiff's counsel has a right to an award of punitive damages in addition to compensatory damages. *Cheatham v. Pohle*, 789 N.E.2d 467 (Ind. 2003); *Durham v. U–Haul Int'l*, 745 N.E.2d 755, 762 (Ind.2001); *Reed v. Central Soya Co.*, 621 N.E.2d 1069, 1076 (Ind. 1993); *Miller Brewing Co. v. Best Beers of Bloomington, Inc.*, 608 N.E.2d 975, 983 (Ind.1993); *Travelers Indem. Co. v. Armstrong*, 442 N.E.2d 349, 362–63 (Ind.1982).

▮▮▮ Only in recent times have requests for punitive damages become commonplace. Indeed, until 1988 Indiana common law precluded punitive damages under a theory, now rejected by statute, that the threat of criminal prosecution for the same acts barred punitive action by the State. *Eddy v. McGinnis*, 523 N.E.2d 737, 741 (Ind.1988). Current law recognizes that punitive damages may serve the societal objective of deterring similar conduct by the defendant or others by way of example. For that reason, if punitive damages are appropriate, the wealth of the defendant has for many years been held relevant to a determination of the appropriate amount. *Hibschman*, 266 Ind. at 317, 362 N.E.2d at 849. As the Supreme Court recently noted, a defendant's wealth "cannot justify an otherwise unconstitutional punitive damages award." *State Farm*, 123 S.Ct. at 1525. But it is nevertheless appropriate consideration. *Id.* (quoting *BMW*, 517 U.S. at 591, 116 S.Ct. 1589 (Breyer, J. concurring)).

Ten thousand dollars is a significant sum to some and a trivial amount to others. Because one legislative goal is deterring

others as well as the defendant, an assessment of the group of likely similar offenders is appropriate. This in turn depends on the nature of the conduct to be deterred. Thus, the perpetrator of a financial crime or a mass tort will usually be a person of substantial resources, and a sizeable award may be the only meaningful penalty. This wrong, however, required only an automobile. Stroud, and others whom we might seek to deter, frequently have no meaningful economic resources. Under these circumstances, ignoring the defendant's financial condition is error.

Stroud is a 17–year–old sentenced to eight years in prison for the criminal charges stemming from this case. His sole source of income at the time of trial was as a participant in the Elkhart County work release program. He plainly has no ability to pay now or in the short to intermediate future. Interest compounded at eight percent per annum on one-half million dollars will dig him into an increasingly deeper hole. Most significantly, he will be unable to discharge this liability through bankruptcy. 11 U.S.C. § 523(a)(9) (2000); *In re Reese*, 91 F.3d 37, 38 (7th Cir.1996).

The defendant's wealth is ordinarily cited as a reason to escalate a punitive award, and that is consistent with the goal of deterrence. But that door swings both ways. An award that not only hurts but permanently cripples the defendant goes too far.[2] A life of financial hopelessness may be an invitation to a life of crime. Perpetual inability to get the financial burden of a judgment off his back leaves a

defendant with few alternatives. The wisdom of rendering an award of punitive damages undischargeable is for the Congress. But given that that decision has been made, courts of our state should consider punitive awards with that legal fact in mind. Stroud has no significant assets today and will have none for some time. Although some portion of Stroud's future wages may be exempt from execution, this award is of dubious benefit to the plaintiff and its present value in dollars is close to zero. But a staggering punitive damages award is not merely a useless act. It also traps the plaintiff and defendant forever in a creditor-debtor relationship that offers little if any financial reward to the plaintiff and seems far more likely to lead to nothing but travail for both.

■ The trial court provided no findings of fact to indicate, first, why a punitive damages award was appropriate, and second, why that award should be set at $500,000. In reviewing the award, the Court of Appeals considered helpful the factors first articulated in *BMW*, and recently reaffirmed in *State Farm*, 123 S.Ct. at 1520. Those factors are: the reprehensibility of conduct; the disparity between the harm suffered and the punitive damages awarded; and the difference between the punitive damages awarded and the civil and criminal penalties authorized or imposed in comparable cases. *BMW*, 517 U.S. at 575, 116 S.Ct. 1589. As the Court of Appeals noted, the *BMW* factors are persuasive, but not dispositive, indicia of whether a particular award is appropriate under Indiana common law. *Stroud*, 760

---

**2.** Courts in other states have reached the same conclusion. *See, e.g., Hollins v. Powell*, 773 F.2d 191, 198 (8th Cir.1985) (remittitur of jury's $500,000 punitive damage award to $2,000, observing that the defendant "lost his position as mayor" and appeared to be "under severe financial constraints"); *City Stores Co. v. Mazzaferro*, 342 So.2d 827, 828 (Fla.

Dist.Ct.App.1977) (punitive damages should "hurt, but not bankrupt," the defendant); *Klimek v. Hitch*, 124 Ill.App.3d 997, 80 Ill.Dec. 289, 464 N.E.2d 1272, 1276 (1984) (punitive award "should send a message loud enough to be heard, but not so loud as to deafen the listener").

N.E.2d at 1181. This is so because *BMW* concerned a due process challenge to an award and did not address whether the award violated any common law theory of excessiveness. In addition, the factors were used to review a trial court's decision as to the constitutionality of a jury award, not to review an award made by a court following a bench trial.

■ In any case, the Court of Appeals also acknowledged that Indiana common law has historically regarded the defendant's wealth as an important factor in determining whether a punitive damages award is excessive. *Stroud,* 760 N.E.2d at 1181; *see also Hibschman,* 266 Ind. at 317, 362 N.E.2d at 849; *Executive Builders, Inc. v. Trisler,* 741 N.E.2d 351, 360 (Ind. Ct.App.2000); *Ford Motor Co. v. Ammerman,* 705 N.E.2d 539, 561 (Ind.Ct.App. 1999); *Bright v. Kuehl,* 650 N.E.2d 311, 316 (Ind.Ct.App.1995); *Archem, Inc. v. Simo,* 549 N.E.2d 1054, 1061 (Ind.Ct.App. 1990); *Ind. & Mich. Elec. Co. v. Stevenson,* 173 Ind.App. 329, 341, 363 N.E.2d 1254, 1263 (1977). Stroud is incorrect to suggest that the plaintiff is required to offer proof of the defendant's ability to pay a punitive damages award. That point was settled by *Hibschman.* 266 Ind. at 317, 362 N.E.2d at 849. However, if there is evidence bearing on ability to pay, we disagree with the view of the Court of Appeals that Stroud's inability to pay this award is inconsequential.

■ We do not doubt the severity of the injuries caused by Stroud. But the judge awarded Lints compensation for his injuries in the amount of $1,381,500.00 after allowing for comparative fault. We agree that punitive damages are intended both to deter others and to punish the wrongdoer. However, the common law has long held that the ability of a defendant to pay a punitive damages award is an important consideration. This doctrine is grounded in sound policy. It not only justifies upholding high awards when the defendant's resources render a lesser amount inconsequential, it also means that in cases such as this, where the defendant is a teenager with no assets and no apparent ability to pay in the future, an award this substantial must be modified. As the Court of Appeals put it in *Ramada Hotel Operating Co. v. Shaffer,* 576 N.E.2d 1264, 1267–68 (Ind.Ct.App.1991):

> Inasmuch as this Court should review the defendant's economic wealth in the situation where punishment and deterrence are the stated purposes, the economic wealth of the defendant is material to the issue of punitive damages so that these objectives will be fulfilled. The economic wealth of a defendant tends to show … the point at which an award of punitive damages becomes an amount which will deter and punish the defendant.

In Stroud's case, the punitive damages award passed the point of deterrence and punishment long before it reached the $500,000 mark.

### Conclusion

We affirm the judgment insofar as it awards compensatory damages. We grant transfer and vacate the trial court's award of punitive damages. We remand so that the trial court may enter an award of punitive damages in an amount reflecting proper consideration of the defendant's financial status.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ., concur.