# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-2598

MARIA F. JUAREZ

*Plaintiff-Appellant,*

v.

MENARD, INC.,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 02 C 55—**Rudy Lozano**, *Judge*.

———————

ARGUED DECEMBER 1, 2003—DECIDED APRIL 26, 2004

———————

Before POSNER, EASTERBROOK, and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge*.  Menards,[1] a chain of home improvements stores operates under a business model which combines warehouse with retail store. Customers make their selections from merchandise displayed on lower shelves and excess merchandise is stored on shelves high above. Consequently, employees at Menards often use machinery to load and unload merchandise from high shelves

---

[1] Although the name of appellee corporation is Menard, Inc., the stores owned by Menard are called "Menards."

at the same time that customers are shopping in the store. On January 19, 2002, two Menard employees were stocking doors in the millwork department of a Menards in Schererville, Indiana, when the doors they were stocking onto a high shelf on one side of an aisle pushed up against a steel door perched on a storage shelf high above the adjacent aisle. The steel door fell from its shelf, hitting Maria Juarez, and, according to Juarez, broke four vertebrae in her back, and caused head injuries, blurred vision, and permanent back and neck injuries.

Juarez filed a complaint in the district court invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332, and seeking compensatory and punitive damages for her injuries. Prior to a trial on the amount of Menard's liability, Menard filed a motion asking the district court to grant summary judgment on Juarez's punitive damages claim, alleging that, even taking the facts in the light most favorable to Juarez, a reasonable jury could not conclude that Menard's actions constituted the type of intentional conduct for which a reasonable jury could award punitive damages. The district court agreed, and on appeal its grant of summary judgment is subject to our *de novo* review. *Lang v. Ill. Dept. of Children and Family Sevs.*, 361 F.3d 416, 418 (7th Cir. 2004).

Juarez proceeded to trial on her remaining claims where a jury determined that she was entitled to $385,000 in compensatory damages.[2] She now appeals the district court's summary judgment determination on punitive damages maintaining that because Menard knew of the risks of falling merchandise but consciously disregarded those risks, she is entitled not only to the compensatory damages awarded by the jury, but to punitive damages as well.

---

[2] As Menard admitted liability, the only issue for the jury to decide was the amount Menard should compensate Juarez for her injuries.

As support for her claim that Menard knew of but disregarded the risks of falling merchandise, Juarez points to several facts, the truth of which we must assume in our review of the grant of summary judgment. *Frobose v. Am. Sav. and Loan Ass'n of Danville*, 152 F.3d 602, 604 (7th Cir. 1998). First, Juarez claims that Menard required all employees to watch a videotape of an episode of the television show "Inside Edition," which featured a story regarding the dangers of falling merchandise at Home Depot, a competing chain of warehouse hardware stores. The videotape chronicles the dangers associated with this shopping format and mentions safeguards and procedures used by Home Depot to reduce the likelihood of injuries. Menard, she claims, failed to implement similar safety procedures such as using fall protection, cordoning off aisles, warning customers of the dangers of falling merchandise, or keeping customers away from merchandise while employees load and unload shelves. In fact, Juarez claims that Menard specifically prohibited employees from cordoning off aisles and posting warning signs in "high risk aisles" so as not to ruin the "shopability" of those aisles. Finally, Juarez argues that Menard knew of the dangers of this type of accident because between June 28, 1997, and January 19, 2002, merchandise fell and injured customers on sixteen separate occasions.

Juarez does not challenge the jury's verdict awarding her $385,000 in compensatory damages as unsatisfactory, and theoretically at least, she has been made whole by that award. Punitive damages, however, go beyond compensating a tort victim for a cognizable wrong. They are designed to deter and punish wrongful activity, and as such, are quasi-criminal in nature. *Cheatham v. Pohle*, 789 N.E.2d 467, 471 (Ind. 2003). Under Indiana law, which we must apply in this diversity action, (*see Erie R.R. Co. v. Tompkins*, 304 U.S 64, 78 (1938)) civil plaintiffs have no right to receive punitive damages. *Cheatham*, 789 N.E.2d at

472. And, in fact, the Indiana General Assembly has demonstrated a disinclination toward allowing unchecked punitive damages awards by enacting legislation that limits the amount of money a plaintiff may receive from a punitive damages award (Ind. Code § 34-51-3-6) and by requiring that a plaintiff establish the facts warranting an award of punitive damages by clear and convincing evidence rather than the usual preponderance of the evidence standard. Ind. Code § 34-51-3-2. Thus in Indiana, before a court may award punitive damages, a plaintiff must demonstrate by clear and convincing evidence that the defendant acted with malice, fraud, gross negligence or oppressiveness that was not the result of mistake of fact or law, honest error of judgment, overzealousness, mere negligence, or other human failing. *USA Life One Ins. Co. v. Nuckolls*, 682 N.E.2d 534, 541 (Ind. 1997); *Bell v. Clark*, 670 N.E.2d 1290, 1294 (Ind. 1996) (incorporating by reference *Bell v. Clark*, 653 N.E.2d 483, 490 (Ind. App. 1995)); *Romine v. Gagle*, 782 N.E.2d 369, 384 (Ind. App. 2003) *transfer denied*, 804 N.E.2d 750; *Wohlwend v. Edwards*, 796 N.E.2d 781, 784 (Ind. App. 2003). Moreover, a trier of fact is not required to award punitive damages even after finding all of the facts necessary to justify the award. *Cheatham*, 789 N.E.2d at 472. The requirements for an award of punitive damages, therefore, go far above and beyond those required for a finding of negligence. Menard does not dispute that it was negligent in allowing this accident to happen. It argues, however, that it did not have the requisite intent needed for an award of punitive damages.

Juarez begins her argument for punitive damages with the premise that "[i]f Menard knew of but disregarded the harmful consequences of its conduct, punitive damages would be appropriate." Appellant's Brief at 9. For this proposition, she cites *Purnick v. England*, 269 F.3d 851 (7th Cir. 2001). But her paraphrased reference to *Purnick* over-simplifies its statement of Indiana law and omits the

critical element of conduct warranting an assessment of punitive damages—conscious and intentional misconduct. In fact, *Purnick* states that a plaintiff may recover punitive damages "only if he can show by clear and convincing evidence that the defendant engaged in *conscious and intentional* misconduct that he knew would probably result in injury." *Id.* at 852 (emphasis ours). It is not enough that the tortfeasor engage in conduct that she knows will probably result in injury. After all, most business owners understand that their operations pose some level of risk of injury to consumers. The tortfeasor must act with conscious indifference or heedless disregard of the consequences of her actions. *Orkin Exterminating Co., Inc. v. Traina*, 486 N.E.2d 1019, 1023 (Ind. 1986). Other Indiana courts have described this consciousness and intention as requiring a show of willful and wonton conduct or a "quasi-criminal state of mind." *Stroud v. Lints*, 760 N.E.2d 1176, 1179 (Ind. App. 2002), *vacated on other grounds*, 790 N.E.2d 440 (Ind. 2003); *Mitchell v. Stevenson*, 677 N.E.2d 551, 564 (Ind. App. 1997). It was this consciousness and intent—or quasi-criminal state of mind—that the district court found lacking when it concluded, based on the evidence presented by Juarez, that no reasonable jury could impose punitive damages. *Juarez v. Menard*, No. 2:02-CV-55, slip op. at 18 (N.D. Ind. May 15, 2003). And upon our *de novo* review, we must agree.

As evidence that Menard knew of but disregarded the harmful consequences of its behavior, Juarez points to the "Inside Edition" videotape which depicts injuries and fatalities from falling merchandise at Home Depot. Juarez maintains that not only was Menard aware of the video, but also that it required all of its employees to watch it. As the district court noted, nothing in the "Inside Edition" videotape, however, suggests that stores like Menards should keep customers out of adjacent aisles when employees are stacking merchandise. *Id.* at 15. The "Inside Edition" story

notes that it is Home Depot's policy to rope off the aisles where merchandise is being loaded, to use spotters to monitor the area around heavy machinery, and to shrink-wrap merchandise stored on high shelves to prevent stray pieces from falling. The videotape story does not discuss merchandise falling in adjacent aisles at all. Consequently, the "Inside Edition" story gave Menard no additional knowledge about the risk of merchandise falling into adjacent aisles. Furthermore, even if Menard had instituted all of the safety procedures mentioned in the "Inside Edition" story, Juarez still may have been injured by a steel door falling in the aisle adjacent to where employees were loading merchandise.

Perhaps, Juarez might argue, our inquiry regarding Menard's knowledge is too narrow. If Menard knew that customers could be injured when employees stocked merchandise in the same aisles in which those customers were shopping, it must also have known that customers could be injured if employees accidentally pushed too hard on merchandise on one side of a shelf, knocking over merchandise on the adjacent shelf. But even if we were to impute this knowledge to Menard, Juarez still fails to demonstrate that Menard's actions rose to the level of intentional, quasi-criminal conduct that Indiana courts require before awarding punitive damages. *See, e.g., Cheatham,* 789 N.E.2d at 470 (wife awarded punitive damages after former husband distributed sixty copies of nude photographs of wife along with her name, her work location and phone number, her new husband's name and her attorney's name around the small community where both parties still lived); *Bell,* 670 N.E.2d at 1294, *incorporating Bell,* 653 N.E.2d at 490 (upholding punitive damage award against lawyer who unfairly and intentionally impugned client/ business partner's reputation for honesty, leading to his ouster as general partner of the business deal and years of litigation); *Mitchell,* 677 N.E.2d at 564 (daughter of decedent awarded

punitive damages after decedent's widow secretly disin-
terred his remains and removed headstone as retribution
for daughter's success in a will contest giving daughter
primary responsibility for maintaining decedent's grave and
monument); *Stroud*, 760 N.E.2d at 1179 (upholding punitive
damage award to injured passenger of drunk driver who
drank excessively, drove ninety-four miles an hour past a
stopped line of traffic, through a stop sign, and into another
vehicle); *Romine*, 782 N.E.2d at 384-85 (landowner awarded
punitive damages after neighbor with whom he had been
involved in contentious litigation, maliciously built a dam-
like berm causing groundwater to swell on and damage
landowner's property).

Similarly, the Schererville Menards' record of sixteen
previous injuries involving falling merchandise does little
to bolster Juarez's claim that Menard disregarded known
risks.[3] The evidence Juarez submitted regarding other
injuries occurring in the Schererville Menards store over a
five-year period contains no detail regarding how those
injuries occurred. Any or all of these injuries may have been
due to customer negligence or other factors unrelated to
merchandise stocking. Without knowledge of how these
accidents occurred, no reasonable jury could use this evi-
dence to find by clear and convincing evidence that Menard
intentionally disregarded a known risk in a willful, wonton,
or quasi-criminal manner.

Nor could a jury come to that conclusion from the evi-
dence presented in employee Nick Orange's affidavit.
Orange was one of the employees stocking merchandise
when the door fell into the adjacent aisle injuring Juarez.
In an affidavit submitted to the district court, Orange

---

[3] Juarez makes no mention of these incidents of falling merchan-
dise in the argument section of her brief. Because she mentions
these incidents in her fact section, however, we discuss what, if
anything, knowledge of these prior incidents contributes to
Menard's liability for punitive damages.

stated that employees attempted to warn Menard managers of the dangers of falling merchandise, and even attempted to implement their own safety procedures by cordoning off aisles and posting homemade paper signs stating, "Do Not Enter." The affidavit, however, does not indicate whether the employees warned Menard of the risk of merchandise falling into *adjacent* aisles, and as it is undisputed that Menard had knowledge of the general risk of falling merchandise, Orange's affidavit adds little to the mix. Nor does the affidavit tell us whether the employees attempted to utilize their homemade safety measures in adjacent aisles, and thus we do not know whether the safety mechanisms, cobbled together by the employees and suggested to management, would have been any more successful in preventing Juarez's accident than the safety procedures already in place.

Furthermore, Menard's prohibition on employee-devised safety measures provides insufficient evidence of malice, gross negligence, or wanton or willful conduct. Menard may have had legitimate reasons for prohibiting employees from creating their own solutions to perceived safety problems; perhaps Menard was concerned that homemade safety remedies might spur, in turn, their own unknown risks or that they might lull employees into a reduced state of vigilance while loading and unloading merchandise. In any case, although it might be wise for an employer to listen to the concerns of those who see workplace dangers firsthand, Juarez has not offered any evidence from which a reasonable jury could find, by clear and convincing evidence, that Menard's refusal to heed employees' safety suggestions, constituted the type of conduct for which punitive damages could be awarded.[4]

---

[4] As both Menard and the district court point out, Orange's affidavit presents some evidentiary problems. Evidence presented to defeat a summary judgment motion need not be in admissible

(continued...)

Menard admitted liability for the accident and a jury awarded Juarez $385,000 in compensatory damages for her injuries. The only question presented by this appeal then is whether Menard acted with malice, fraud, gross negligence or oppressiveness which was not the result of mistake of fact or law, honest error or judgment, overzealousness, mere negligence or other human failing. Although Menard's failure to protect customers from falling merchandise pushed by employees loading stock in an adjacent aisle was, as Menard admits, negligent, it did not constitute the type of willful and wanton or quasi-criminal conduct for which punitive damages may be assessed. Consequently we AFFIRM the decision of the district court.

---

(...continued)

form, but it must be admissible in content. *Payne v. Pauley*, 337 F.3d 767, 775 n.3 (7th Cir. 2003), citing *Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002). Consequently, affidavits submitted in an attempt to thwart summary judgment must be based on personal knowledge as required by both Federal Rule of Civil Procedure 56(e) ("[s]upporting and opposing affidavits shall be made on personal knowledge"), and by Federal Rule of Evidence 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). *Payne*, 337 F.3d at 772. Orange states that he had no personal knowledge of the other incidents of falling merchandise striking customers. (Juarez App. at 32) He also states that "[t]he danger of falling merchandise and striking customers [sic] was brought to the attention of management," but we do not know by whom. *Id.* Likewise, we do not know the basis for his statement that "management was indifferent to the issue and the danger created." *Id.* Despite these evidentiary problems, even were we to accept the truth of all of Orange's assertions, we would still find that Juarez did not present sufficient evidence for a reasonable jury to award punitive damages.

A true Copy:

     Teste:

                      _____

                      *Clerk of the United States Court of*
                      *Appeals for the Seventh Circuit*